(Slip Opinion) OCTOBER TERM, 2009 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## WOOD *v.* ALLEN, COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 08–9156.　Argued November 4, 2009—Decided January 20, 2010

Under 28 U. S. C. §2254(d)(2), a federal court may grant a state prisoner habeas relief if his claim was adjudicated on the merits in state court and "resulted in a decision . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under §2254(e)(1), "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."

Petitioner Wood was convicted of capital murder and sentenced to death in Alabama state court. Two of his court-appointed attorneys, Dozier and Ralph, had significant trial experience, but the third, Trotter, had only recently been admitted to the bar. After exhausting his appeals, Wood sought postconviction relief under Alabama Rule of Criminal Procedure 32, arguing, among other things, that he was mentally retarded and not eligible for the death penalty, and that his trial counsel were ineffective because they failed to investigate and present evidence of his mental deficiencies during the trial's penalty phase. The Rule 32 court conducted evidentiary hearings and denied the claims initially and on remand. As to the mental retardation claim, it found that Wood had not shown deficits in his adaptive functioning. As to the ineffective-assistance-of-counsel claim, it concluded that he had not established that his counsel's performance was deficient or that any deficiency prejudiced his defense. In so doing, it made a factual finding that counsel had made a strategic decision not to pursue evidence of Wood's alleged retardation. Observing that counsel had asked Dr. Kirkland to conduct a mental evaluation, had thoroughly reviewed his report, and had determined that no further

investigation was warranted, the court additionally held that counsel appeared to have made a strategic decision not to present their limited mental-deficiency evidence to the jury because having Dr. Kirkland testify was not in Wood's best interest. It also found no reasonable probability of a different outcome had the evidence developed in the Rule 32 proceedings been presented at trial. Woods subsequently sought federal habeas relief under §2254. The District Court rejected all but his ineffective-assistance-of-counsel claim. The District Court concluded that the state court's finding that counsel made a strategic decision was an unreasonable determination of the facts. The court further held that counsel's performance was deficient and had prejudiced Wood, and that the state court's contrary holdings were an unreasonable application of federal law under *Strickland* v. *Washington*, 466 U. S. 668. Reversing, the Eleventh Circuit held that the state court's rejection of Wood's ineffective-assistance claim was neither an unreasonable application of clearly established law nor based on an unreasonable determination of the facts. With respect to the facts, it concluded that the evidence in the Rule 32 hearings supported the state court's strategic-decision finding, and it agreed with the state court's legal conclusion that counsel's strategic decision was reasonable and that Wood had failed to show prejudice. Wood's certiorari petition raises the questions (1) whether, in order to obtain relief under §2254(d)(2), a petitioner must establish only that the state-court factual determination on which the decision was based was "unreasonable," or whether §2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence; and (2) whether the state court's strategic-decision determination was reasonable.

*Held:*

   1. Even under Wood's reading of §2254(d)(2), the state court's conclusion that his counsel made a strategic decision not to pursue or present evidence of his mental deficiencies was not an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings. This Court need not reach the question whether §2254(e)(1) applies in every case presenting a challenge under §2254(d)(2), see *Rice* v. *Collins*, 546 U. S. 333, 339, because its view of the state court's factual determination here does not depend on an interpretative difference regarding the relationship between those provisions. While "[t]he term 'unreasonable' is . . . difficult to define," *Williams* v. *Taylor*, 529 U. S. 362, 410, it suffices to say that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. See *Rice, supra,* at 341–342. Here, the state-court record shows that all of Wood's counsel read the Kirkland

report. Trotter testified that Dozier told him that nothing in the report merited further investigation, a recollection supported by the attorneys' contemporaneous letters; and Trotter told the sentencing judge that counsel did not intend to introduce the report to the jury. This evidence can fairly be read to support the Rule 32 court's factual determination that counsel's failure to pursue or present evidence of Wood's mental deficiencies was not mere oversight or neglect but the result of a deliberate decision to focus on other defenses. Most of the contrary evidence Wood highlights—*e.g.,* that Dozier and Ralph put the inexperienced Trotter in charge of the penalty phase proceedings—speaks not to whether counsel made a strategic decision, but to whether counsel's judgment was reasonable, a question not before this Court. Any evidence plausibly inconsistent with the strategic-decision finding does not suffice to show that the finding was unreasonable. Pp. 8–12.

2. Because Wood's argument that the state court unreasonably applied *Strickland* in rejecting his ineffective-assistance claim on the merits is not "fairly included" in the questions presented under this Court's Rule 14.1(a), it will not be addressed here. Pp. 12–13.

542 F. 3d 1281, affirmed.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, THOMAS, GINSBURG, BREYER, and ALITO, JJ., joined. STEVENS, J., filed a dissenting opinion, in which KENNEDY, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 08–9156

_____

## HOLLY WOOD, PETITIONER *v.* RICHARD F. ALLEN, COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[January 20, 2010]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

The Antiterrorism and Effective Death Penalty Act of 1996 contains two provisions governing federal-court review of state-court factual findings. Under 28 U. S. C. §2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under §2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." In this case, petitioner, a capital defendant, challenges the key factual finding made by the Alabama state court that denied his application for postconviction relief: that his attorneys' failure to pursue and present mitigating evidence of his borderline mental retardation was a strategic decision rather than a negligent omission.

Petitioner argues that the state court's finding was unreasonable under §2254(d)(2) and that, in denying his federal habeas petition, the Court of Appeals for the Eleventh Circuit erroneously conflated this standard with that of §2254(e)(1), which petitioner contends is not applicable in cases, such as this one, not involving a separate federal habeas evidentiary hearing.

We granted certiorari to address the relationship between §§2254(d)(2) and (e)(1). We conclude, however, that the state court's factual determination was reasonable even under petitioner's reading of §2254(d)(2), and therefore we need not address that provision's relationship to §2254(e)(1). Accordingly, we affirm the judgment of the Court of Appeals on that basis.

I

In 1993, petitioner Holly Wood broke into the home of his ex-girlfriend and shot her in the head and face as she lay in her bed. The victim was pronounced dead on arrival at the hospital. Charged with capital murder during a first-degree burglary, Wood was represented at trial in Alabama state court by three court-appointed attorneys: Cary Dozier and Frank Ralph, both of whom had significant trial experience, and Kenneth Trotter, who had been admitted to the bar for five months at the time he was appointed. The jury convicted Wood at the guilt phase of trial and recommended a death sentence at the penalty phase by a vote of 10 to 2. After a separate sentencing hearing, the trial judge imposed the death penalty. The Alabama Court of Criminal Appeals affirmed Wood's conviction and sentence, *Ex parte Wood*, 715 So. 2d 812 (1996), as did the Alabama Supreme Court, *Wood* v. *State*, 715 So. 2d 819 (1998). This Court denied certiorari. *Wood* v. *Alabama*, 525 U. S. 1042 (1998).

Wood petitioned for state postconviction relief under Alabama Rule of Criminal Procedure 32 (2009), arguing,

among other things, that he was mentally retarded and not eligible for the death penalty, and that his trial counsel were ineffective under *Strickland* v. *Washington*, 466 U. S. 668 (1984), because they failed to investigate and present evidence of his mental deficiencies during the penalty phase of trial. App. to Pet. for Cert. 198a–202a, 207a–210a, 213a–216a, 220a–221a, 225a. The Rule 32 court held two evidentiary hearings and denied Wood's claims. On appeal, the Alabama Court of Criminal Appeals remanded for further consideration in light of *Atkins* v. *Virginia*, 536 U. S. 304 (2002), which held that the Eighth Amendment prohibits the execution of the mentally retarded. *Wood* v. *State*, 891 So. 2d 398 (2003).

On remand, the Rule 32 court conducted a third evidentiary hearing and once again denied relief. As to Wood's claim of mental retardation, the court found that, while the evidence suggested that he "probably does exhibit significantly subaverage general intellectual functioning," he had failed to show "that he has significant or substantial deficits in his adaptive functioning." App. to Pet. for Cert. 236a–237a.

The court also rejected Wood's factually related claim of ineffective assistance of counsel, concluding that Wood had failed to establish that his counsel's performance was deficient or that any deficiency prejudiced his defense. *Id.,* at 257a–275a. The court first made a factual finding that Wood's counsel had made a strategic decision not to pursue evidence of his alleged mental retardation. The court observed that counsel had requested that a Dr. Karl Kirkland conduct a mental evaluation, had "thoroughly reviewed Dr. Kirkland's report," and had "determined that nothing in that report merited further investigation." *Id.,* at 264a, 271a. The court additionally found that counsel appeared to have made a strategic decision not to present to the jury the limited evidence of Wood's mental deficiencies in their possession, because "calling Dr. Kirkland to

testify was not in Wood's best interest." *Id.,* at 271a–272a.
The court concluded that these strategic decisions were
reasonable and thus that counsel had not performed defi-
ciently. *Ibid.* The court further concluded that there was
"no reasonable probability" of a different outcome had the
evidence developed in the Rule 32 hearings been presented
to the jury or to the sentencing court. *Id.,* at 273a. The
Alabama Court of Criminal Appeals affirmed, App. 589–
610, and the Alabama Supreme Court denied certiorari,
*id.,* at 4.

Wood then filed a petition for federal habeas relief
under §2254. The District Court rejected all of Wood's
claims save one: that counsel's failure to investigate and
present mitigation evidence of his mental deficiencies
during the penalty phase constituted ineffective assistance
of counsel. 465 F. Supp. 2d 1211, 1239–1245 (MD Ala.
2006). According to the court, there was "nothing in the
record to even remotely support a finding that counsel
made a strategic decision not to let the jury at the penalty
stage know about Wood's mental condition." *Id.,* at 1242.
Ralph and Dozier, the court noted, had placed the inexpe-
rienced Trotter in charge of the penalty phase. At the
Rule 32 hearing, Trotter testified that he had seen the
references to Wood's intellectual functioning in the Kirk-
land report but did not recall considering whether to
pursue that issue. Trotter further testified that he had
unsuccessfully attempted to subpoena Wood's school re-
cords and that he did not recall speaking to any of Wood's
teachers. Trotter had also written to an attorney at the
Southern Poverty Law Center explaining that he was
"'stressed out over this case and [didn't] have anyone with
whom to discuss the case, including the other two attor-
neys.'" *Id.,* at 1241. Shortly before the penalty phase
began, Trotter told the judge that he would request fur-
ther psychological evaluation before the judge's sentencing
hearing, even though the evaluation would come too late

to be considered by the jury. *Id.,* at 1241–1242. Based on this evidence, the District Court concluded that the state court's finding "that a strategic decision was made not to investigate or introduce to the sentencing jury evidence of mental retardation [was] an unreasonable determination of the facts in light of the clear and convincing evidence presented in the record." *Ibid.*

Having rejected the state court's factual determinations, the District Court held that counsel's performance was deficient and that counsel's deficient performance prejudiced Wood, concluding that the state court's holdings to the contrary constituted "an unreasonable application of federal law under *Strickland.*" *Id.,* at 1245. The court granted the petition on this claim and ordered the State either to resentence Wood to life without parole or to conduct a new sentencing hearing.

In a divided opinion, the Eleventh Circuit reversed the grant of habeas relief. 542 F. 3d 1281 (2008). The majority began by explaining the standard of review: "Section 2254(d) permits federal habeas relief only where the state courts' decisions were (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.,* at 1285 (quoting §§2254(d)(1)–(2)). A "'determination of a factual issue made by a State court shall be presumed to be correct,'" the majority explained, and the petitioner "'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Ibid.* (quoting §2254(e)(1)). "Thus," the majority stated, the federal habeas court's "'review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review.'" *Ibid.*

The majority then held that the Alabama court's rejection of Wood's ineffective-assistance-of-counsel claim was

neither an unreasonable application of clearly established law nor based on an unreasonable determination of the facts. With respect to the facts, the court concluded that the evidence presented in the Rule 32 hearings supported the state court's findings that counsel made a strategic decision not to present mental health evidence during the penalty phase. "At a minimum," the court noted, "Wood has not presented evidence, much less clear and convincing evidence, that counsel did not make such decisions." *Id.,* at 1304, n. 23. The court also agreed with the state court's legal conclusion that counsel's strategic decision was reasonable. According to the court, the silent record created a presumption that counsel exercised sound professional judgment, supported by ample reasons, not to present the information they had obtained. These reasons included unfavorable information in Dr. Kirkland's report, such as details about Wood's 19 earlier arrests and his previous attempt to murder another ex-girlfriend, as well as Dr. Kirkland's conclusion that, notwithstanding Wood's mental deficiencies, Wood had a high level of adaptive functioning. *Id.,* at 1304–1306. The court added that the investigation preceding counsel's decision was sufficient to permit them to make a reasoned decision, crediting the Rule 32 court's findings that, *inter alia*, counsel not only employed an investigator who sought mitigation evidence from family members but also themselves met with family members and sought guidance from capital defense organizations. *Id.,* at 1307–1308. The court also accepted as not "objectively unreasonable" the state court's determination that Wood had failed to show prejudice from counsel's failure to present evidence of his mental deficiencies. *Id.,* at 1309, 1314.

The dissent, implicitly considering the factual question whether counsel made a strategic decision as part and parcel of the legal question whether any strategic decision was reasonable, concluded that "[n]o such strategic deci-

sions could possibly have been made in this case because counsel had failed to adequately investigate the available mitigating evidence." *Id.,* at 1316. According to the dissent, "the weight of the evidence in the record demonstrates that Trotter, an inexperienced and overwhelmed attorney," unassisted by senior counsel, "realized too late"—only in time to present it to the sentencing judge, not to the penalty jury—"what any reasonably prepared attorney would have known: that evidence of Wood's mental impairments could have served as mitigating evidence and deserved investigation so that it could properly be presented before sentencing*." Id.*, at 1320. The dissent also concluded that there was a reasonable probability of a different outcome at the penalty phase had the evidence been presented, because the jury could have concluded that Wood was less culpable as a result of his diminished abilities. *Id.,* at 1322–1325. The dissent therefore concluded that the state court's application of *Strickland* to the facts of this case was unreasonable. 542 F. 3d*,* at 1326.

We granted certiorari to resolve two related questions raised by Wood's petition. First, we granted review of a question that has divided the Courts of Appeals: whether, in order to satisfy §2254(d)(2), a petitioner must establish only that the state-court factual determination on which the decision was based was "unreasonable," or whether §2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence.[1] We also granted review of the

--------

[1]See, *e.g.,* 542 F. 3d 1281, 1285, 1304, n. 23 (CA11 2008) (decision below); *Taylor* v. *Maddox*, 366 F. 3d 992, 999–1000 (CA9), cert. denied, 543 U. S. 1038 (2004) (where a habeas petitioner challenges state-court factual findings "based entirely on the state record," the federal court reviews those findings for reasonableness only under §2254(d)(2), but where a petitioner challenges such findings based in part on evidence that is extrinsic to the state-court record, §2254(e)(1) applies); *Lambert*

question whether the state court reasonably determined that Wood's counsel made a "strategic decision" not to pursue or present evidence of his mental deficiencies. 556 U. S. __ (2009). Wood's petition raised two additional questions on which we declined to grant certiorari. *Ibid.* Neither of these asked us to review whether the state court's resolution of Wood's ineffective-assistance-of-counsel claim was "contrary to, or involved an unreasonable application of, clearly established Federal law" under §2254(d)(1) and *Strickland*.

## II
## A

Notwithstanding statements we have made about the relationship between §§2254(d)(2) and (e)(1) in cases that did not squarely present the issue, see Brief for Petitioner 37–38; Brief for Respondents 28–29, we have explicitly left open the question whether §2254(e)(1) applies in every case presenting a challenge under §2254(d)(2), see *Rice* v. *Collins*, 546 U. S. 333, 339 (2006). The parties and their

---

v. *Blackwell*, 387 F. 3d 210, 235 (CA3 2004) ("§2254(d)(2)'s reasonableness determination turns on a consideration of the totality of the 'evidence presented in the state-court proceeding,' while §2254(e)(1) contemplates a challenge to the state court's individual factual determinations, including a challenge based wholly or in part on evidence outside the state trial record"); *Trussell* v. *Bowersox*, 447 F. 3d 588, 591 (CA8) (federal habeas relief is available only "if the state court made 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' 28 U. S. C. §2254(d)(2), which requires clear and convincing evidence that the state court's presumptively correct factual finding lacks evidentiary support"), cert. denied, 549 U. S. 1034 (2006); *Ben-Yisrayl* v. *Buss*, 540 F. 3d 542, 549 (CA7 2008) (§2254(d)(2) can be satisfied by showing, under §2254(e)(1), that a state-court decision "rests upon a determination of fact that lies against the clear weight of the evidence" because such a decision "is, by definition, a decision so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable" (internal quotation marks omitted)).

*amici* have offered a variety of ways to read the relationship between these two provisions.[2] Although we granted certiorari to resolve the question of how §§2254(d)(2) and (e)(1) fit together, we find once more that we need not reach this question, because our view of the reasonableness of the state court's factual determination in this case does not turn on any interpretive difference regarding the relationship between these provisions. For present purposes, we assume for the sake of argument that the factual determination at issue should be reviewed, as Wood urges, only under §2254(d)(2) and not under §2254(e)(1). We conclude that, under §2254(d)(2), the state court's finding that Wood's counsel made a strategic decision not to pursue or present evidence of Wood's mental deficiencies was not an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings. We therefore do not need to decide whether that determination should be reviewed under the arguably more deferential standard set out in §2254(e)(1).

As we have observed in related contexts, "[t]he term 'unreasonable' is no doubt difficult to define." *Williams* v. *Taylor*, 529 U. S. 362, 410 (2000). It suffices to say, however, that a state-court factual determination is not un-

————————

[2] In Wood's view, when a petitioner seeks relief based entirely on the state-court record, a federal court reviews the state court's findings for reasonableness under §2254(d)(2). Section 2254(e)(1) comes into play, according to Wood, only when a petitioner challenges individual state-court factual findings based in part on evidence that is extrinsic to the state-court record. Brief for Petitioner 38–39. According to respondents, §2254(e)(1) applies to any challenge to a state court's factual findings under §2254(d)(2), including a challenge based solely on the state-court record. Brief for Respondents 35–37. Respondents' *amici* offer still further variations, although they all agree with respondents that §2254(e)(1) applies in some fashion in every habeas case reviewing state-court factual findings. Brief for Criminal Justice Legal Foundation as *Amicus Curiae* 5, 10–14; Brief for State of Indiana et al. as *Amici Curiae* 2, 12–18.

reasonable merely because the federal habeas court would have reached a different conclusion in the first instance. Cf. *id.,* at 411. In *Rice*, for example, in which we assumed, *arguendo*, that only §2254(d)(2) and not §2254(e)(1) applied, 546 U. S., at 339, we rejected the Ninth Circuit's conclusion that a state-court factual determination was unreasonable. We noted that even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Id.,* at 341–342.

In this case, the evidence in the state-court record demonstrated that all of Wood's counsel read the Kirkland report. App. 12, 174, 210, 283. Trotter testified that Dozier told him that nothing in the report merited further investigation, a recollection that is supported by contemporaneous letters Trotter wrote to Dozier and Ralph noting that no independent psychological evaluations had been conducted because Dozier had said they would not be needed. *Id.,* at 283, 343, 345. Trotter also told the sentencing judge that counsel did not intend to introduce the Kirkland report to the jury. *Id.,* at 12. This evidence in the state-court record can fairly be read to support the Rule 32 court's factual determination that counsel's failure to pursue or present evidence of Wood's mental deficiencies was not mere oversight or neglect but was instead the result of a deliberate decision to focus on other defenses.

Arguing that the state court's factual determination to this effect was unreasonable, Wood calls our attention to Dozier's testimony during the Rule 32 proceedings that evidence of Wood's mental health problems would have been presented during the penalty phase if counsel had been aware of it, *id.,* at 169; that Dozier did not recall whether he had decided not to present evidence based on the Kirkland report, *id.,* at 168, 171; and that Dozier and Ralph had designated the inexperienced Trotter to be in charge of the penalty phase proceedings, *id.,* at 270–271.

Trotter, in turn, testified that he did not recall considering Wood's mental deficiencies. *Id.,* at 288. Wood also observes that the Kirkland report was prepared for the guilt phase, not the penalty phase, and a strategic decision not to use the Kirkland report in the former does not necessarily carry over into the latter. *Id.,* at 324. Wood notes that his counsel sought to obtain additional evidence about his mental health to use in mitigation after reviewing the Kirkland report, but they failed to pursue it, in part out of a belief that the sentencing judge would not grant a continuance to permit them to investigate. *Id.,* at 285, 343–346. Finally, Wood emphasizes that his counsel must have thought that evidence of his mental deficiencies was important because they presented it to the judge at the final sentencing hearing. *Id.,* at 88.

Most of the evidence Wood highlights, however, speaks not to whether counsel made a strategic decision, but rather to whether counsel's judgment was reasonable—a question we do not reach. See Part II–B, *infra.* As for any evidence that may plausibly be read as inconsistent with the finding that counsel made a strategic decision, we conclude that it does not suffice to demonstrate that the finding was unreasonable.[3]

––––––––––

[3] The dissent suggests that counsel could not have made a strategic decision not to pursue evidence of Wood's mental deficiencies because there could be no reasonable justification for doing so. *Post*, at 3–5 (opinion of STEVENS, J., joined by KENNEDY, J.). This interpretation conflates the question whether a decision was strategic with the question whether a strategic decision was reasonable. Cf. *post,* at 2, n. 1. Without expressing a view on the ultimate reasonableness of the decision not to pursue this evidence further, we note that the Eleventh Circuit majority observed that the state court could reasonably have determined that counsel had strategic grounds for their decision. In particular, evidence about Wood's mental deficiencies may have led to rebuttal testimony about the capabilities he demonstrated through his extensive criminal history, an extraordinarily limited amount of which was actually admitted at the penalty phase of the trial. Counsel's

Reviewing all of the evidence, we agree with the State that even if it is debatable, it is not unreasonable to conclude that, after reviewing the Kirkland report, counsel made a strategic decision not to inquire further into the information contained in the report about Wood's mental deficiencies and not to present to the jury such information as counsel already possessed about these deficiencies. Cf. *Rice*, *supra*, at 341–342. For that reason, we agree with the Court of Appeals that the District Court erred in holding to the contrary.

### B

Wood also argues that the state-court decision involved an unreasonable application of *Strickland* under §2254(d)(1) because counsel failed to make a reasonable investigation of Wood's mental deficiencies before deciding not to pursue or present such evidence. Without a reasonable investigation, Wood contends, these decisions were an unreasonable exercise of professional judgment and constituted deficient performance under *Strickland*. We agree with the State, however, that this argument is not "fairly included" in the questions presented under this Court's Rule 14.1(a). Whether the state court reasonably determined that there was a strategic decision under §2254(d)(2) is a different question from whether the strategic decision itself was a reasonable exercise of profes-

―――――――――

decision successfully thwarted the prosecutor's efforts to admit evidence that Wood murdered his ex-girlfriend while on parole for an attempted murder of a different ex-girlfriend that was strikingly similar in execution to the subsequent successful murder. App. 23–24. Moreover, as the Eleventh Circuit majority noted, evidence of Wood's mental deficiencies also could have undercut the defense's argument that he left school to support his family, suggesting instead that he left school because of educational difficulties. 542 F. 3d, at 1305–1306. Counsel's decision about which avenues to investigate can therefore plausibly be described as strategic rather than necessarily being the product of "happenstance, inattention, or neglect," *post*, at 4.

sional judgment under *Strickland* or whether the application of *Strickland* was reasonable under §2254(d)(1). Cf. *Rice*, 546 U. S., at 342 ("The question whether a state court errs in determining the facts is a different question from whether it errs in applying the law"). These latter two questions may be "*related* to the one petitione[r] presented, and perhaps *complementary* to the one petitione[r] presented," but they are "not fairly included therein." *Yee* v. *Escondido*, 503 U. S. 519, 537 (1992) (internal quotation marks omitted).

It is true that Wood's petition discussed the Eleventh Circuit's misapplication of §2254(d)(1) and *Strickland*. Pet. for Cert. 22–27. But "the fact that [petitioner] discussed this issue in the text of [his] petition for certiorari does not bring it before us. Rule 14.1(a) requires that a subsidiary question be fairly included in the *question presented* for our review." *Izumi Seimitsu Kogyo Kabushiki Kaisha* v. *U. S. Philips Corp.*, 510 U. S. 27, 31, n. 5 (1993) *(per curiam)*. We therefore do not address Wood's argument that the state court unreasonably applied *Strickland* in rejecting his ineffective-assistance-of-counsel claim on the merits.

\*    \*    \*

Because the resolution of this case does not turn on them, we leave for another day the questions of how and when §2254(e)(1) applies in challenges to a state court's factual determinations under §2254(d)(2). We hold simply that, even under petitioner's reading of §2254(d)(2), the state court's conclusion that Wood's counsel made a strategic decision not to pursue or present evidence of his mental deficiencies was not an unreasonable determination of the facts. Accordingly, we affirm the judgment of the Court of Appeals for the Eleventh Circuit.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

————

No. 08–9156

————

## HOLLY WOOD, PETITIONER *v.* RICHARD F. ALLEN, COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[January 20, 2010]

JUSTICE STEVENS, with whom JUSTICE KENNEDY joins, dissenting.

There is a world of difference between a decision not to introduce evidence at the guilt phase of a trial and a failure to investigate mitigating evidence that might be admissible at the penalty phase. Wood's experienced counsel made a perfectly sensible decision not to introduce Dr. Kirkland's report into evidence or to call him as a witness. That was a strategic decision based on their judgment that the evidence would do more harm than good. But it does not follow from this single strategic decision that counsel also made a strategic decision to forgo investigating powerful mitigating evidence of Wood's mental deficits for the penalty phase. On the contrary, the only reasonable factual conclusion I can draw from this record is that counsel's decision to do so was the result of inattention and neglect. Because such a decision is the antithesis of a "strategic" choice, I would reverse the decision of the Court of Appeals.

Assuming that the Court is correct to decline to consider whether the state court's application of *Strickland* v. *Washington*, 466 U. S. 668 (1984) was reasonable, see *ante*, at 12–13, the question whether the decision itself was the product of a strategy is still before us. The Court

may well be correct that the state court reasonably concluded that counsel made a decision not to pursue Dr. Kirkland's report for either guilt or penalty phase purposes, *ante*, at 10–12, but to reject Wood's claim the state court also had to reasonably conclude that such a decision was borne of strategy. And whether counsel's decision was the product of strategy is a question of fact for purposes of 28 U. S. C. §2254(d)(2).[1] Cf. *Wiggins* v. *Smith*, 539 U. S. 510, 526–527 (2003) (observing that "the 'strategic decision' the state courts and respondents all invoke to justify counsel's limited pursuit of mitigating evidence resembles more a *post hoc* rationalization of counsel's conduct than an accurate description of their deliberations prior to sentencing"); *Carr* v. *Schofield*, 364 F. 3d 1246, 1264 (CA11 2004) (identifying "whether counsel's decisions were tactical or strategic" as a question of fact (citing *Horton* v. *Zant*, 941 F. 2d 1449, 1462 (CA11 1991)));[2] *Berryman* v. *Morton*, 100 F. 3d 1089, 1095 (CA3 1996) (same). In other words, the Court correctly concludes that the record reasonably supports a finding that counsel decided not to

---

[1] The Court explains: "Whether the state court reasonably determined that there was a strategic decision under §2254(d)(2) is a different question from whether the strategic decision itself was a reasonable exercise of professional judgment under *Strickland* or whether the application of *Strickland* was reasonable under §2254(d)(1)." *Ante*, at 12–13. I agree with the majority that whether a particular strategic decision is reasonable or not is the *Strickland* question we would address were we reviewing Wood's claim for habeas relief under §2254(d)(1).

[2] Indeed, the law in the Eleventh Circuit on this point is well settled: "'The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact . . . .'" *Fotopoulos* v. *Secretary, Dept. of Corrections*, 516 F. 3d 1229, 1233 (CA11 2008) (quoting *Provenzano* v. *Singletary*, 148 F. 3d 1327, 1330 (CA11 1998)); see also *Lamarca* v. *Secretary, Dept. of Corrections*, 568 F. 3d 929, 938 (CA11 2009) (same). Thus, it is quite understandable that Wood framed the questions presented in his petition for certiorari as arising under §2254(d)(2).

investigate Wood's mental retardation further, but the Court fails to engage with the requisite second question: Does the record reasonably support finding that counsel's decision was a strategic one? The answer to this question is unequivocally no.

Before petitioner's trial, his counsel learned that Wood had an "IQ in the borderline range of intellectual functioning," App. 327, and was "functioning, at most," in this borderline range, *id.*, at 328. Wood was "reading on less than a 3rd grade level." *Id.*, at 327. His former special education teacher testified during postconviction review that Wood was classified as "educable mentally retarded" by the local school system. *Id.*, at 403. In short, Wood has the type of significant mental deficits that we recognize as "inherently mitigating," *Tennard* v. *Dretke*, 542 U. S. 274, 287 (2004).[3]

Despite the powerful mitigating value of this evidence, "[n]o evidence of Wood's mental retardation was ever presented to the jury." 542 F. 3d 1281, 1314 (CA11 2008) (Barkett, J., concurring in part, dissenting in part). Counsel was clearly aware that this evidence existed, *id.*, at 1318, but chose not to investigate it beyond the conclusions outlined in Dr. Kirkland's report, App. 283. In the Court's view, the record reasonably supports the state court's conclusion that "counsel made a strategic decision not to inquire further into" Wood's mental deficiencies, *ante*, at 12. Although I agree with the majority that the failure was the result of a "decision," albeit a hasty one, the Court regrettably fails to consider whether the decision was also "strategic" as a matter of fact.

_____

[3] Although Wood does not fall within the class of individuals we identified in *Atkins* v. *Virginia*, 536 U. S. 304 (2002), against whom the death penalty may not be constitutionally imposed, "the reality that [the defendant] was 'borderline mentally retarded,' might well . . . influenc[e] the jury's appraisal of his moral culpability." *Williams* v. *Taylor*, 529 U. S. 362, 398 (2000).

A decision cannot be fairly characterized as "strategic" unless it is a conscious choice between two legitimate and rational alternatives. It must be borne of deliberation and not happenstance, inattention, or neglect. See *Wiggins*, 539 U. S., at 526 (concluding that counsel's "failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment"); *Strickland*, 466 U. S., at 690–691. Moreover, "a cursory investigation" does not "automatically justif[y] a tactical decision with respect to sentencing strategy." *Wiggins*, 539 U. S., at 527. Although we afford deference to counsel's strategic decisions, *Strickland*, 466 U. S., at 690–691, for this deference to apply there must be some evidence that the decision was just that: strategic.

The lawyers' duty to conduct a thorough investigation of possible mitigating evidence is well established by our cases, *Porter* v. *McCollum*, 558 U. S. ___, ___ (2009) *(per curiam)* (slip op., at 10); *Rompilla* v. *Beard*, 545 U. S. 374, 387 (2005); *Wiggins*, 539 U. S., at 522–523; *Williams* v. *Taylor*, 529 U. S. 362, 396 (2000); *Strickland*, 466 U. S., at 688. These cases also make clear that counsel's unconsidered decision to fail to discharge that duty cannot be strategic. The only conceivable strategy that might support forgoing counsel's ethical obligations under these circumstances would be a reasoned conclusion that further investigation is futile and thus a waste of valuable time. Cf. *id.,* at 691 (recognizing that counsel's decision to abandon an investigation is entitled to deference "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful"). There is no evidence in the record to suggest that Wood's counsel reached such a conclusion.[4] See 542 F. 3d, at 1321–1322

—————————

[4] The Court conflates the strategic decision to present mitigating evidence to the jury with the strategic decision to investigate avenues of mitigating evidence fully, see *ante,* at 11–12, n. 3. My concern is that

(Barkett, J., concurring in part, dissenting in part).  On the contrary, the Court recognizes that Wood has pointed to substantial evidence that Trotter, the attorney who had primary responsibility for Wood's penalty phase, believed that further investigation had value, *ante*, at 10–11. Despite the fact that Trotter had a meager five months of experience as a lawyer when he was appointed to represent Wood, App. 261, even he knew that further investigation into any mental or psychological deficits was in order.[5]

In my view, any decision to abandon an investigation into the mitigating evidence signaled by Dr. Kirkland's report was so obviously unreasonable that the decision itself is highly persuasive evidence that counsel did not have any strategy in mind when they did so.  I share the view of my dissenting colleague below that the District

_____

there is no evidence to support a conclusion that there was a strategic decision on the latter, which is a necessary prerequisite for counsel to make reasoned choices with respect to what evidence should go before the jury during the penalty phase of a capital trial.  See, *e.g.*, *Wiggins*, 539 U. S., at 522 (explaining that "counsel's failure to uncover and present voluminous mitigating evidence at sentencing could not be justified as a tactical decision to focus on [defendant's] voluntary confessions, because counsel had not 'fulfill[ed] their obligation to conduct a thorough investigation of the defendant's background'" (quoting *Williams*, 529 U. S., at 396)).

[5] Shortly before the penalty phase commenced, Trotter sent letters to his two more experienced co-counsel imploring that "we should request an independent psychological evaluation—even if that means asking for a postponement of the sentencing hearing."  App. 343 (letter from Trotter to Dozier); *id.*, at 345 (letter from Trotter to Ralph).  Trotter attempted to procure Wood's school records and speak to his former special education teachers in order to obtain "anything that would be able to be used as a mitigating factor," *id.*, at 267 (testimony of Trotter), but he failed to follow up on a subpoena issued for the records and never spoke at length with any of Wood's teachers, *id.*, at 267–268. Notably, at least two of these former teachers were willing to testify on Wood's behalf at the state postconviction hearing, see *id.,* at 401–421 (testimony of Maddox and Penn).

Court correctly concluded that the failure to investigate was the product of inattention and neglect by attorneys preoccupied with other concerns and not the product of a deliberate choice between two permissible alternatives. For the state court to conclude otherwise was thus "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" within the meaning of 28 U. S. C. §2254(d)(2).[6]

I therefore respectfully dissent.

_____

[6] I would also reach the same conclusion were I to agree with the respondents and their *amici* that a habeas petitioner must pierce §2254(e)(1)'s presumption of correctness with respect to state-court findings of fact before he can proceed to show he is entitled to relief under §2254(d)(2). See *ante*, at 9, n. 2.