# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3765

_____

Robert D. Cochran

*Petitioner - Appellant*

v.

Dave Dormire, Superintendent; Chris Koster

*Respondents - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 13, 2012
Filed: December 14, 2012
[Published]

_____

Before RILEY, Chief Judge, WOLLMAN and MELLOY, Circuit Judges.

_____

PER CURIAM.

Robert Cochran appeals the district court's[1] denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We affirm. Because we affirm the denial of

_____

[1] The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

Cochran's petition on the merits, we do not address Respondents' contention that Cochran's petition is untimely.

## I.

Anthony Hurt was shot and killed during a burglary of his home on the evening of June 14, 1996. Arthur Burns, Hurt's roommate, was arriving home in his car on June 14 when he observed two black males running out the front door of Hurt's home. Burns pursued the two, but he soon crashed his car and returned to Hurt's home. Finding Hurt fatally shot, Burns called the police. The police arrived around 7:00 P.M.

Later that night, police questioned Ronsell Williams in connection with the crimes. Williams confessed he, Cochran, and Wornel Mitchell had burglarized Hurt's home. According to Williams, Hurt returned home unexpectedly during the burglary, and Cochran shot Hurt as Williams and Mitchell ran out the front door. Mitchell surrendered to police on June 15, confessed to the burglary, and also claimed Cochran shot Hurt. Questioned by police, Cochran denied he was involved. He admitted he saw Williams and Mitchell on June 14, but he claimed he left them before the crimes took place to visit a friend, James Green. Cochran also stated that after visiting Green, he visited his girlfriend, Jackie Reed. According to Cochran, he and Jackie spent the night in a room at the Bluebird Motel reserved for them by Malcolm, another of Cochran's friends.

At Cochran's trial, Williams and Mitchell testified against Cochran.[2] Additionally, Police Sergeant Jay Pruetting testified police had been unable to confirm Cochran's claim that he parted with Williams and Mitchell to visit Green.

---

[2]Cochran's first trial ended in a mistrial. Cochran was convicted following a second trial. We take these facts from the state court.

Pruetting also testified that police had questioned staff at the Bluebird Motel and at several other motels in the area and found no record of Cochran, Jackie Reed, or Malcolm at any of the motels ("Pruetting's motel testimony"). Cochran's trial counsel did not object to Pruetting's motel testimony.

Jackie Reed and her mother Mary Reed testified on Cochran's behalf. Neither woman had a criminal record. The Reeds testified Cochran had visited Jackie Reed on June 14, 1996 for two short periods, first at 6:30 P.M. and again between 7:15 and 7:30 P.M. Jackie Reed further testified Cochran returned around 10:00 P.M., at which time they left to spend the night in a motel. She believed they stayed at either the Bluebird Motel or the Skyview Motel. Green and Malcolm were not called to testify.

The jury convicted Cochran of one count of second-degree murder, one count of first-degree burglary, and one count of armed criminal conduct. Cochran received a life sentence on the murder conviction and fifteen-year sentences on each of the two remaining convictions, all to run concurrently. His direct appeals were unsuccessful.

Cochran then filed a Missouri Supreme Court Rule 29.15 motion for post-conviction relief. Cochran argued Pruetting's motel testimony was hearsay to which his trial counsel should have objected. He argued the admission of Pruetting's motel testimony prejudiced his alibi defense because it undermined the credibility of his entire statement to the police. He also argued his trial counsel was deficient in failing to investigate Green as an alibi witness. He argued Green's testimony would have corroborated Cochran's statement to police and thus supported Cochran's alibi defense as a whole.[3]

---

[3] Cochran raised additional claims in his 29.15 motion and in his federal habeas petition in the district court, but on this appeal he raises only his trial counsel's failure to object to Pruetting's motel testimony and failure to investigate Green.

Cochran's trial counsel testified at his 29.15 hearing. However, some ten years had passed since Cochran's trial, and his trial counsel could not recall anything about Cochran's case.[4] She could only provide generic testimony about her usual trial practices. She stated it was not her practice to call all potential alibi witnesses. Instead, she would call the witness who would "come off the best," taking the criminal history of the potential witnesses into account. She described the difficulty of contacting potential witnesses who, due to a pending criminal charge or incarceration, were represented by attorneys—attorneys might advise their clients against testifying and prevent her from contacting their clients directly. Finally, she testified she always developed a strategy before trial.

Green was deposed in connection with Cochran's 29.15 motion because he could not be present at the hearing. Green confirmed Cochran visited him on June 14, 1996, "earlier than evening, [or] earlier evening." Green testified he spoke with the police either late on June 15 or early on June 16 and told them Cochran had visited him on June 14. Green acknowledged he was incarcerated on February 19, 1998, the last day of Cochran's trial. He testified no one from the public defender's office contacted him between June 14, 1996 and the end of February 1998. At the time of Cochran's trial, Green had two convictions for drug possession on his record. Green stated he would have responded to a request to testify on Cochran's behalf.

Applying Strickland v. Washington, 466 U.S. 668 (1984), the Missouri state court denied Cochran's motion. It concluded that the crimes occurred around 6:30 P.M. on June 14. The court concluded that while Pruetting's motel testimony may

---

[4] The state court allowed Cochran to file his 29.15 motion out of time. Cochran claimed he timely filed a 29.15 motion, but on bad advice of counsel, he filed in the wrong court, where the motion lingered for eight years before Cochran discovered his mistake. As stated above, because we affirm denial of Cochran's petition on the merits, we do not address Respondents' argument that Cochran's current federal petition is untimely.

have constituted hearsay, Cochran had not proven he suffered any prejudice as a result of his trial counsel's failure to object. First, Jackie Reed's testimony—that she and Cochran had spent the night at either the Bluebird or the Skyview motel—supported Cochran's statement to police. Second, the court noted Jackie's testimony that she and Cochran did not leave for the motel until 10:00 P.M.. Since Pruetting's motel testimony did not relate to Cochran's alibi for the time the crimes were committed, the court concluded, Cochran had not shown prejudice.

The state court also concluded Cochran had failed to prove his trial counsel had not investigated Green. The court noted the generic testimony of Cochran's trial counsel that she always investigated alibi witnesses and that potential witnesses who were incarcerated and represented by attorneys were problematic. The court emphasized that, under Strickland, counsel is strongly presumed to have provided competent assistance, and the court ruled that Cochran had failed to show his trial counsel's decision not to call Green was not merely a strategic decision.

The Missouri Court of Appeals affirmed, and Cochran subsequently filed a federal habeas petition alleging ineffective assistance of counsel. The district court largely adopted the state court's factual findings and denied Cochran's petition. On appeal, Cochran contends his trial counsel was ineffective by (1) failing to object to Pruetting's motel testimony and (2) failing to investigate Green as a potential witness.

II.

We may grant a petition for habeas corpus under § 2254 only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] determination of a factual issue made by a

State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e). Finally, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 130 S. Ct. 841, 849 (2010).

To succeed on a claim of ineffective assistance of counsel, a defendant has the burden of showing (1) trial counsel was deficient and (2) the defense was prejudiced as a result. Strickland, 466 U.S. at 687. To demonstrate deficient performance, a defendant must show "counsel's representation fell below an objective standard of reasonableness." Id. at 687–88. To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

A. Failure to object to Pruetting's motel testimony

We agree with the district court that the failure of Cochran's trial counsel to object to Pruetting's motel testimony does not entitle Cochran to habeas relief. Even if we assume that Pruetting's motel testimony constituted hearsay and that the failure of Cochran's trial counsel to object constituted deficient performance, there is no reasonable probability the outcome of Cochran's trial would have changed had Pruetting's motel testimony been disallowed.

We acknowledge Cochran's argument that Pruetting's motel testimony impacted the credibility of Cochran's entire statement to the police. However, as we note above, a state court's determination is not unreasonable simply because we might have reached a different conclusion. See Wood, 130 S. Ct. at 849. The state court determined that Cochran failed to prove prejudice because Pruetting's motel testimony did not specifically relate to the time frame of the crimes. The state court

also noted Jackie Reed's testimony—that she and Cochran spent the night of June 14 in a motel—supported Cochran's statement to police. On these facts, we cannot say the state court's determination that Cochran failed to prove prejudice was contrary to Strickland. Pruetting's motel evidence consisted of one short statement regarding the outcome of police inquiries. Considering the significant body of testimony from Williams, Mitchell, Mary Reed, additional state witnesses, and four additional defense witnesses, we find no reasonable probability that the admission of Pruetting's motel evidence altered the outcome of Cochran's trial.

B. Failure to investigate Green as a witness

We find no basis on which to upset the state court's determination that Cochran failed to carry his burden of proving his trial counsel did not investigate Green. To prove his trial counsel did not investigate Green, Cochran relies on Green's testimony that no one from the public defender's office contacted Green between June 4, 1996 and the end of February 1998. The state court noted that Green was incarcerated at the time of Cochran's trial. It also cited the testimony of Cochran's trial counsel regarding her general practice of always interviewing alibi witnesses and the difficulties of procuring testimony from potential witnesses who were incarcerated and represented by attorneys. On this record we cannot say the state court's determination was unreasonable.[5] The single claim that Green was not contacted by Cochran's trial counsel, even if accepted, does not establish that Cochran's trial counsel failed to investigate Green. Cochran has not provided the clear and

_____

[5] Cochran claims that given the difficulties of locating evidence years after his trial, the state court held him to an "impossible" standard of proof when it determined he had failed to prove his trial counsel did not investigate Green. However, the fact that gathering evidence of his trial counsel's performance was made more difficult by the passage of time does not alter the legal standard of Strickland under which Cochran bears the burden of proof.

convincing evidence we require to rebut the presumption that the state court's determinations were correct. See 28 U.S.C. § 2254(e).

Additionally, we find no reasonable probability that Green's testimony would have changed the outcome of Cochran's trial. Based on the facts Burns reported to police and the time police arrived at Hurt's home, it was not unreasonable for the state court to determine that the crimes were committed around 6:30 P.M. on June 14. Assuming the crimes took place at 6:30 P.M., the time frame for Cochran's alibi was covered by the testimony of Jackie and Mary Reed. According to Green's deposition, Green could only testify that Cochran visited him at some point in the early evening of June 14. This evidence is not sufficiently strong to create a reasonable probability that Green's testimony would have altered the outcome of Cochran's trial, especially since Jackie and Mary Reed provided direct alibi testimony. Thus, the state court's determination that Cochran failed to show prejudice was not contrary to or an unreasonable application of federal law.

## III.

For the reasons stated above, we affirm the district court's denial of Cochran's petition.

_____