**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

CECIL BOYETT,

    Petitioner - Appellant,

v.

R.C. SMITH, Warden, Lea County
Correctional Facility; ATTORNEY
GENERAL FOR THE STATE OF NEW
MEXICO,

    Respondents - Appellees.

No. 18-2107
(D.C. No. 2:17-CV-00374-KG-CG)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Cecil Boyett, a New Mexico prisoner proceeding pro se, appeals from the district

court's denial of his 28 U.S.C. § 2254 habeas application challenging his conviction for

first degree murder, which carried a mandatory sentence of life in prison with eligibility

for parole after thirty years. This court granted a certificate of appealability (COA) on

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It may
be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

Mr. Boyett's claim that his trial counsel was ineffective and denied a COA on all other claims. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253, we affirm.

## I. BACKGROUND

Mr. Boyett and Renate Wilder were to be married on February 6, 2004. A few days before the wedding, Ms. Wilder left the home she shared with Mr. Boyett without telling him where she was going. As it turned out, she was with her friend and former lover, Deborah Roach. Mr. Boyett suspected Ms. Wilder was with Ms. Roach and tried to locate them but was unsuccessful.

Ms. Wilder came home during the afternoon of February 5. Shortly after her return, Ms. Roach approached the house. When Ms. Roach arrived, Mr. Boyett grabbed a handgun, opened the front door, and shouted at her to leave the property. He then shot her in the head. She was taken to the hospital, where she died.

At his trial, "[t]he State successfully argued to the jury that [Mr. Boyett] hated [Ms. Roach], was furious with her for having kept Wilder away without telling him about it, and shot her that afternoon to put an end to her meddling in the couple's affairs." *State v. Boyett*, 185 P.3d 355, 357 (N.M. 2008). Mr. Boyett, however, "claimed that [Ms. Roach] came to the house that day intent on killing him to prevent his impending marriage to Wilder." *Id.* "[I]n the process of trying to run her off, he observed her draw the gun that he knew she routinely carried. In fear for his life, [Mr. Boyett] raised his revolver and shot [Ms. Roach]. [Mr. Boyett] asserted that if he had not shot her, she would have fired her gun and fatally wounded him." *Id.* Testimony from third parties established that a handgun was found under Ms. Roach's arm after she was shot.

2

In addition to arguing self-defense, Mr. Boyett claimed that he was unable to form the specific intent necessary to commit first-degree murder because of a traumatic brain injury (TBI) he had suffered in 1998, the result of a violent attack by a patient while he was working as a nurse. His ineffective-assistance claim, which is the only claim relevant to this appeal, arises from that specific-intent theory of defense.

Part of Mr. Boyett's own testimony addressed the TBI and its effects on his cognitive abilities. Counsel also had planned to support the specific-intent defense by calling Dr. Lori Martinez, a clinical psychologist who had examined Mr. Boyett for competency and who had further opined that he was incapable of forming specific intent. But the day before she was scheduled to take the stand, Dr. Martinez notified counsel that in light of additional records she had received from the prosecution, she would not testify. Counsel did not call Dr. Martinez, did not present testimony from any other expert, and did not request either a continuance to obtain expert testimony or a mistrial. As a result of the failure to provide expert testimony, the trial court refused to instruct the jury on the specific-intent defense.

The jury found Mr. Boyett guilty of first degree murder. The trial court subsequently denied Mr. Boyett's motion for a new trial, which alleged that the defense had been taken by surprise by Dr. Martinez's withdrawal and denied the opportunity to present expert testimony regarding specific intent. That motion, however, did not attach any evidence from an expert supporting a lack of capacity to form specific intent. On

direct appeal, the New Mexico Supreme Court affirmed both the denial of the specific-intent instruction and the denial of a new trial. *Id.* at 362, 363.

Mr. Boyett then pursued state post-conviction relief, arguing, among other issues, that his counsel was ineffective in failing to call an expert witness to support his specific-intent defense. The state district court held an evidentiary hearing, at which an expert in forensic psychology, Dr. Susan Cave, testified that, if called, she would have opined that Mr. Boyett lacked the capacity to form the specific intent to commit murder. An experienced criminal attorney opined that Mr. Boyett's trial counsel performed deficiently with regard to the specific-intent defense. But another experienced criminal attorney opined that the self-defense and specific-intent arguments were somewhat contradictory, that defense counsel had a strong case for self-defense, and that in New Mexico arguing self-defense was much more likely to succeed than arguing a lack of capability to form specific intent.

The state district court denied post-conviction relief. It held that Dr. Cave's "testimony would have been insufficient to permit the requisite instruction of lack of or inability to form specific intent, because the evidence proved that [Mr. Boyett] engaged in other activities that required an ability to form specific intent at the time of the shooting." R. at 471. Because of potential conflicts between self-defense and the specific-intent defense and advantages to self-defense (such as the possibility of a complete acquittal), "[r]easonably competent trial counsel could reasonably have decided to abandon the diminished capacity claim when his expert changed her opinion and refused to testify." *Id.* at 472. "Defense counsel's actions were therefore, consistent with

4

a legitimate trial tactic" and did "not fall below an objective standard of reasonableness." *Id.* The state district court further held that Mr. Boyett "did not show a reasonable probability that but for claimed errors of counsel, the result of the proceedings would have been different." *Id.* at 473. "The defense in this case provided a plausible self-defense case, and such defense was a stronger argument than a claim of diminished capacity to form specific intent." *Id.* The New Mexico Supreme Court denied a writ of certiorari, making the state district court's decision the last reasoned decision of the state courts.

Mr. Boyett then raised his ineffective-assistance claim, along with other claims, in his § 2254 application to the federal district court. The magistrate judge recommended that the district court deny habeas relief, and Mr. Boyett timely objected. The district court adopted the recommendation, denied the § 2254 application, and denied a COA. As stated, this court subsequently granted a COA on the ineffective-assistance claim.

## II. ANALYSIS

"In appeals from orders denying a writ of habeas corpus, we review the district court's legal analysis de novo and its factual findings for clear error." *Postelle v. Carpenter*, 901 F.3d 1202, 1208 (10th Cir. 2018). Because Mr. Boyett proceeds pro se, we construe his filings liberally and hold them to a less stringent standard than filings drafted by lawyers. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

5

## I.      Legal Standards

### A.      Habeas Standards

Because the state courts addressed the merits of the ineffective-assistance claim, the federal courts review the claim under 28 U.S.C. § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011). Section 2254(d) allows habeas relief only when the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). It establishes a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted).

#### 1.      Section 2254(d)(1) Standards

A state-court decision is contrary to Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "But a state court need not cite the Court's cases or, for that matter, even be aware of them. So long as the state-court's reasoning and result are not contrary to the Court's specific holdings, § 2254(d)(1) prohibits us from granting relief." *Wood v. Carpenter*, 907 F.3d 1279, 1289 (10th Cir. 2018) (*Tremane Wood*).

6

A state court unreasonably applies Supreme Court precedent if it "identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] state court's application of federal law is only unreasonable if all fairminded jurists would agree the state court decision was incorrect." *Tremane Wood*, 907 F.3d at 1289 (internal quotation marks omitted).

### 2.    Section 2254(d)(2) Standards

"[A] state court-decision unreasonably determines the facts if the state court plainly misapprehended or misstated the record in making its findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim." *Id.* (brackets and internal quotation marks omitted). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (*Holly Wood*). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination." *Id.* (brackets, ellipsis, and internal quotation marks omitted).

7

**B.    Ineffective-Assistance Standards**

For this ineffective-assistance claim, the clearly established federal law is *Strickland v. Washington*, 466 U.S. 668 (1984).[1]  Under *Strickland*, a defendant must demonstrate both that counsel's performance was deficient and that counsel's deficient performance prejudiced his defense.  *Id.* at 687.

"[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  *Id.*  To satisfy the performance prong, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* at 689 (internal quotation marks omitted).  "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.*  A court must make every effort to "reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.*

Under the prejudice prong, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at

---

[1] Mr. Boyett suggests that this case should be measured under the standards set forth in *United States v. Cronic*, 466 U.S. 648, 659 (1984).  This assertion contradicts his counsel's concession at the state-court evidentiary hearing that *Strickland* controls.  And his counsel was correct.  Because the "argument is not that his counsel failed to oppose the prosecution throughout the . . . proceeding as a whole, but that his counsel failed to do so at specific points," the proper precedent is *Strickland* rather than *Cronic*.  *Bell v. Cone*, 535 U.S. 685, 697-98 (2002).

8

687. The defendant satisfies the prejudice prong by establishing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

## II. Discussion

In light of the deferential standards applicable under both § 2254(d) and *Strickland*, our review of the state court's denial of an ineffective-assistance claim is "doubly deferential"; "[w]e take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." *Cullen*, 563 U.S. at 190 (citation and internal quotation marks omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but instead, it is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. "Under § 2254(d), a habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to

9

reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Although the state court did not cite *Strickland*, it identified and analyzed the applicable factors (performance and prejudice). Neither its reasoning nor its result was contrary to or an unreasonable application of *Strickland*. As required by *Strickland*, the state court made an effort to reconstruct the circumstances, affording deference to counsel. It concluded that in light of Mr. Boyett's strong case for self-defense, it was not deficient performance for trial counsel effectively to abandon the specific-intent defense when Dr. Martinez abruptly declined to testify. It further concluded that Mr. Boyett had not suffered prejudice. At a minimum, these are reasonable arguments that counsel satisfied *Strickland*'s deferential standards. *See Harrington*, 562 U.S. at 105. In *Knowles v. Mirzayance*, for example, the Supreme Court refused to disturb a state court's rejection of an ineffective-assistance claim arising out of a recommendation that a client abandon a weak position after witnesses refused to testify:

> It was not unreasonable for the state court to conclude that his defense counsel's performance was not deficient when he counseled Mirzayance to abandon a claim that stood almost no chance of success. . . . [T]his court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance of success.

556 U.S. at 123.[2] And even if the state court erred in its conclusions, that does not make its decision unreasonable. *See Williams*, 529 U.S. at 411. In sum, the state court's ruling

---

[2] Mr. Boyett suggests that counsel was ineffective and violated his right to compulsive process in failing to subpoena Dr. Martinez to testify. It is not clear whether Mr. Boyett raised this aspect of his ineffective-assistance argument before the state

(continued)

is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Finally, there is no indication that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," so as to satisfy § 2254(d)(2). Even if we were to disagree with a state-court finding, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Holly Wood*, 558 U.S. at 301. Again, at a minimum, reasonable minds might disagree about the state court's findings, meaning that Mr. Boyett is not entitled to relief under § 2254(d)(2). *See id.*

### III. CONCLUSION

Mr. Boyett's motion to proceed without prepayment of costs and fees is granted. The district court's judgment is affirmed.

Entered for the Court

Allison H. Eid
Circuit Judge

---

courts. But in any event, the Supreme Court has stated, "[c]ompetence does not require an attorney to browbeat a reluctant witness into testifying." *Knowles*, 556 U.S. at 125. Moreover, Dr. Martinez's withdrawal suggests that her testimony might have damaged rather than aided Mr. Boyett's case.

11