NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0544n.06

No. 11-3390

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 04, 2013**
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| BRIAN J. CUMMINGS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| WARDEN, ROSS CORRECTIONAL | ) | STATES DISTRICT COURT FOR THE |
| INSTITUTION, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Respondent-Appellee. | ) | |

Before: SILER, GIBBONS, and GRIFFIN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Petitioner Brian J. Cummings appeals the district court's order denying his 28 U.S.C. § 2254 petition for a writ of *habeas corpus.* Cummings was convicted by a jury of operating a motor vehicle while under the influence of alcohol, driving under suspension, and carrying a concealed weapon. He alleges that the prosecutor failed to disclose the pretrial destruction of the truck involved in the accident in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Cummings properly exhausted his claim in the Ohio state courts and subsequently filed a petition pursuant to 28 U.S.C. § 2254 in the district court, which was denied. The district court did, however, grant Cummings a certificate of appealability on his *Brady* claim. This timely appeal followed. Because the Ohio Court of Appeals did not unreasonably apply federal law in denying relief on Cummings's *Brady* claim, we affirm the judgment of the district court.

I.

The facts underlying Cummings's conviction, as determined by the Ohio Court of Appeals, are as follows:

> On April 4, 2006, police discovered [Cummings] walking from the scene of a single-vehicle traffic accident. The vehicle, a Chevrolet S10 truck, appeared to have been driven up an embankment and then had flipped over a traffic control device. Officers arriving at the scene determined that [Cummings] had suffered a head injury during the accident. The officers questioned [Cummings] at the scene, and [Cummings] indicated that he was not the driver of the truck. The officers observed no other individuals at the scene of the accident, and found no other passengers in the vicinity of the accident after conducting a search.
>
> Officers observed that [Cummings] smelled strongly of alcohol and gasoline, and that he had glassy, bloodshot eyes and slurred his speech. Further, the officers noted that [Cummings] staggered and had considerable difficulty maintaining his footing. When the officers questioned [Cummings] regarding the accident, [Cummings]'s answers were nonresponsive and inconsistent. After approximately twenty minutes of questioning, the officers were able to determine [Cummings]'s name and discovered that [Cummings] had an active warrant for his arrest.
>
> When an officer attempted to place [Cummings] under arrest, [Cummings] began making fists with his hand and shouting obscenities. After the officer handcuffed [Cummings], he was searched for weapons, at which time it was discovered that [Cummings] was carrying two pocket knives and brass knuckles in his pocket, as well as a dagger in his shoe. Another dagger was located underneath the vehicle. Officers also found keys in [Cummings]'s pocket, and those keys were successfully used to unlock the door of the vehicle and to operate the ignition. The officers did not administer a field sobriety test. [Cummings] was then transported to a hospital, where he refused to submit to a blood alcohol test.
>
> [Cummings] was charged with operating a motor vehicle while under the influence of alcohol ("OVI") in violation of [Ohio Rev. Code § 4511.19(A)], driving under suspension ("DUS") in violation of [Ohio Rev. Code § 4510.11(A)], and carrying a concealed weapon in violation of [Ohio Rev. Code § 2923.12(A)(1)]. After a jury trial, [Cummings] was convicted on all counts, and the trial court imposed a ten-year prison sentence.

No. 11-3390
*Brian J. Cummings v. Warden, Ross Correctional Institution*

*State v. Cummings*, No. 2006-09-224, 2007 WL 2757752, at *1 (Ohio Ct. App. Sept. 24, 2007).

At trial, the State presented the testimony of a number of police officers who explained their interactions with Cummings, the evidence they found at the scene, and their observations of the truck at issue.

City of Middletown Police Officer Becky Leuckhardt testified that she and Officer Tim Meehan responded to a call regarding a flipped-over truck during the evening of April 4, 2006. Upon arrival at the scene, Leukhardt noticed the truck resting on a raised embankment on the south side of McCurry Avenue in Middletown. She also observed Cummings walking off the embankment and stumbling across the intersection. The officers noticed a strong odor of alcohol and gasoline on Cummings's person. The traffic light at the intersection had been knocked out of the ground and was turned over. The officers determined that the truck had been traveling southbound on University Boulevard, crossed the median onto McCurry Avenue, struck the traffic light, and landed on the embankment.

When Leukhardt asked Cummings if he was injured, Cummings initially denied that he was connected to the truck. Eventually he said that he was a passenger in the truck and that the driver had walked away in the direction from which the officers had just arrived. He claimed that he did not know the driver's name. The officers had seen no one walking in the area. Leukhardt testified that Cummings became increasingly evasive as she asked more questions and that he had a "strong odor" of alcohol, had slurred speech, and was "very unsteady on his feet." Leukhardt testified that his clothing was wet, he smelled of gasoline, he had grass and mud on his clothing, he had superficial scratches on his face, and his eyes were "very bloodshot."

-3-

Once Cummings gave Leukhardt his name, Leukhardt discovered that Cummings had an outstanding warrant and placed him under arrest. He refused and screamed obscenities until Leukhardt forcibly cuffed him. As Leukhardt conducted a protective pat-down of Cummings, she found keys to the wrecked truck, two knives, and a set of brass knuckles wrapped in work gloves in Cummings's coat pocket. Beneath Cummings's sock, Leukhardt found a "dagger-like" knife in a sheath. Another sheathed dagger was found on the ground under the truck. Leukhardt then determined that the license plate on the truck did not match the truck. Upon questioning, Cummings first told officers that he owned the truck, but later claimed it was owned by his mother. Cummings was then taken to the hospital in an ambulance. At the hospital, Leukhardt attempted to obtain Cummings's consent to a blood test for alcohol consumption. Cummings refused and was belligerent. Several hours later, Cummings was booked at the police station.

Officer Nicholas Marconi, who was also present at the scene of the crash, testified that he observed a strong odor of gasoline and noticed an empty beer keg that was attached to a chain in the truck bed. Marconi observed that the steering wheel, dashboard, and seats were broken. He noticed an empty bottle of whiskey on the ground near the truck. Marconi also found a piece of mail addressed to Cummings in the front passenger area of the vehicle. Marconi saw Leukhardt take the keys from Cummings's pocket and later saw Sergeant John McGill use those keys in the truck's driver side door and ignition to see if they matched. Marconi also witnessed the towing company winch the truck onto the flatbed trailer, with the tires spinning freely, which he inferred to indicate that the car was in neutral and that the key was in the ignition.

Officer Tim Meehan also testified. He corroborated Leukhardt's testimony and described Cummings's reactions when asked about the driver of the truck. Cummings said that he did not know who the driver was and could not provide a name. He could not give a description of what the person was wearing or provide "anything about this guy." Meehan testified that Cummings kept "trying to walk away" and that he was generally evasive and disoriented. Meehan identified the truck as a Chevrolet S-10 pickup truck, and saw that it had sustained heavy damage and that the doors were shut. He also saw the whiskey bottle, which he noticed was not moist on the outside, leading him to conclude that it had come from inside the truck. He noticed that the passenger window was broken out or did not exist, that the windshield was cracked, and that there was a spiderweb crack on the interior of the front passenger side of the windshield. He testified that the steering wheel was damaged from the impact of a person, who may have been "thrown to the passenger side of the vehicle." Meehan also noticed a strong odor of gasoline and found a piece of paper on the passenger side floorboard with Cummings's name and address on it. When confronted with the piece of paper, Meehan testified that Cummings told Meehan that his mother owned the truck. When asked again why his mail was in the truck and the keys were in his pocket, Cummings started "cussing, yelling, wanting to fight." Meehan also noted that he saw no one walking in the area.

Police Sergeant John McGill, a trained traffic crash investigator, then testified as to his investigation on the night of the accident. After observing the truck, McGill noticed that the front bumper had impacted a light pole, toward the passenger side of the truck. He believed the passenger-side windshield break had been caused by impact with a person's head. McGill testified that the

windshield strike could have come from a glancing blow of the truck's driver, if the driver had not been wearing his seatbelt. He hypothesized that if a passenger, rather than the driver, had struck the windshield, he would have been pinned inside the truck. McGill testified that the truck's doors were closed when he arrived and that the passenger door would not open because the crushing of the roof prevented it. McGill also stated that the steering wheel had been displaced and appeared consistent with someone striking it. McGill observed Leukhardt searching in Cummings's coat pocket and finding the keys to the truck. McGill testified that he took the keys from Leukhardt, and that the keys opened the door lock and started the ignition. He did not recall the ignition being stripped or the keyhole missing from the ignition. McGill testified that the keys were General Motors keys, but he could not recall how many keys were on the key ring. After confirming that the keys operated the truck, McGill took the ignition key from the key ring for the towing company and returned the other keys to Leukhardt. McGill testified that he believed that Cummings was the only occupant in the truck at the time of the accident.

Cummings renewed his motion for acquittal at the close of the evidence, which the trial court denied. The jury returned a guilty verdict for operating a motor vehicle while under the influence of alcohol, in violation of Ohio Rev. Code § 4511.19(A); driving under suspension, in violation of Ohio Rev. Code § 4510.11(A); and carrying a concealed weapon, in violation of Ohio Rev. Code § 2923.12(A)(1). The trial court sentenced Cummings to an aggregate term of ten years, a three-year period of post-release control, a fine, court costs, and a lifetime driver's license suspension. When the trial court inquired about forfeiture of the truck at sentencing, the State responded that it did not

know whether the vehicle was impounded or junked. Defense counsel responded that the truck had been destroyed "for some time now."

On direct appeal, Cummings argued, among other things, that the State violated *Brady* by destroying the truck prior to trial. The Ohio Court of Appeals denied relief. *Cummings*, 2007 WL WL 2757752, at *1. The Ohio Supreme Court then declined to exercise jurisdiction regarding Cummings's *pro se* appeal on the ground that it did not involve a substantial constitutional question. Cummings filed a motion for post-conviction relief in the trial court, which was denied without a hearing. The Ohio Court of Appeals affirmed that judgment and the Ohio Supreme Court dismissed this appeal as not involving a substantial constitutional question. Cummings then filed a petition pursuant to 28 U.S.C. § 2254 in the district court, which was denied. The district court did, however, grant Cummings a certificate of appealability on this claim. This timely appeal followed.

## II.

In *habeas corpus* proceedings, this court reviews a district court's legal conclusions *de novo* and its factual findings for clear error. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (en banc). Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

No. 11-3390
*Brian J. Cummings v. Warden, Ross Correctional Institution*

28 U.S.C. § 2254(d).

As to legal conclusions, pursuant to the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ if the state court's application of clearly established federal law to the facts of the prisoner's case was objectively unreasonable in light of the evidence presented in the state court proceedings. *Id.* at 409–11. Importantly, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. Finally, under the "unreasonable determination" clause of § 2254(d)(2), federal courts must bear in mind that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010).

Section 2254(d), as amended by AEDPA, is a "purposefully demanding standard." *Montgomery*, 654 F.3d at 676 (citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). To obtain relief, a *habeas* petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786–87. This "'highly deferential standard'" requires that determinations made in state court "'be given the benefit of the doubt.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

It is in this context that the court reviews Cummings's claim that the State improperly withheld from him its pretrial destruction of the truck involved in the accident. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "To assert a successful *Brady* claim, a habeas petitioner must show that: (1) evidence favorable to the petitioner, (2) was suppressed by the government, and (3) the petitioner suffered prejudice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 323 (6th Cir. 2012) (internal quotation marks omitted). Evidence is material and must be disclosed "if there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the case would have been different." *Wilson v. Parker*, 515 F.3d 682, 701 (6th Cir. 2008). A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985) (internal quotation marks omitted). A "reasonable *possibility* that the suppressed evidence might have produced a different outcome" is insufficient to meet the *Brady* standard. *Montgomery v. Bobby*, 654 F.3d 668, 678 (6th Cir. 2011) (en banc).

> Regarding Cummings's *Brady* claim, the Ohio Court of Appeals noted:
>
> [Cummings] argues that prosecutorial misconduct occurred during his trial. He claims that the state failed to disclose exculpatory information, namely that the vehicle had been destroyed, and also failed to disclose during discovery certain evidence it intended to use at trial. [Cummings] asserts that the prosecutorial misconduct violated his due process rights under *Brady v. Maryland*, [373 U.S. 83 (1963)].
>
> The Ohio Supreme Court has recognized that "[t]he suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *State v. Johnston*, [529 N.E.2d 898 (Ohio 1988)], paragraph four

of the syllabus, citing *Brady v. Maryland*. In making the determination of whether a due process violation exists, "evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Johnston* at paragraph five of the syllabus. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome[.]" *Id.*, citing *United States v. Bagley*, [473 U.S. 667 (1985)].

*Brady* and its progeny apply only to evidence unknown to the defendant at the time of the trial. *See United States v. Agurs*, [427 U.S. 97 (1976)]. According to the record, [Cummings] was aware of the existence of this evidence. As such, we find that there can be no [c]onstitutional violation in the state's failure to disclose those items.

While [Cummings] argues that the destruction of the truck is potentially exculpatory because evidence of the destruction of the truck could have been presented to the jury to rebut the circumstantial evidence that he was the driver of the truck, we note that [Cummings] has failed to clearly articulate how in fact the destruction of the truck would have rebutted any of the evidence presented by the state. Rather, [Cummings] speculates that, had he known that the truck had been destroyed, he would have been able to argue that he was denied the opportunity to introduce evidence that would have rebutted the state's evidence or impeached the state's witnesses. [Cummings]'s speculation does not demonstrate how the destruction of the truck is in any way exculpatory. The prosecutor did not suppress evidence that was material either to [Cummings]'s guilt or his punishment, and as such, there was no *Brady* violation.

*Cummings*, 2007 WL 2757752, at *5.

With regard to the first prong, Cummings does not allege that the truck itself would demonstrate who was driving the truck at the time of the accident and therefore does not show how the truck's destruction is "materially favorable." Rather, he claims only that the fact of the truck's destruction would have undermined the credibility of the State's testifying officers. Cummings cites to *Bagley* and *Giglio v. United States*, 405 U.S. 150 (1972), for the proposition that he "could have impeached the credibility of the police witnesses by demonstrating that the State permitted tangible evidence that would have confirmed or denied whether he operated the vehicle [to be destroyed]."

However, Cummings misunderstands the type of impeachment evidence that must be disclosed under *Brady*. The destruction of the truck does not reveal bias or interest on the part of any of the government's witnesses, as did the evidence at issue in the cases Cummings cites. In *Bagley*, the government failed to disclose information regarding contracts signed by undercover informant witnesses, indicating that they would be paid by the Bureau of Alcohol, Tobacco, and Firearms for providing information and for testifying. *Bagley*, 473 U.S. at 671–72. In *Giglio*, the government failed to disclose an alleged promise that a key witness would not be prosecuted if he testified for the government. *Giglio*, 405 U.S. at 150–51, 154–55. In those cases, the documents that were not disclosed were directly relevant to the potential bias of testifying witnesses. By contrast, the destruction of the truck has no bearing on the officers' incentive to testify truthfully.

Even if we were to determine that the State withheld evidence and that it was exculpatory or favorable, the Ohio Court of Appeals's conclusion that disclosure of the truck's destruction would not have had a reasonable probability of changing the outcome of Cummings's trial was not an unreasonable application of federal law. Cummings claims that he would have raised the fact of the truck's destruction at trial and that this fact "would have dealt a general blow to the prosecution's credibility." Further, he asserts that "the destroyed evidence was directly related to . . . the prosecution's . . . key arguments as to why Cummings had been the driver of the truck." However, this argument was available to Cummings at the time of trial. Nothing precluded defense counsel from attempting to examine the truck or from asking police officers on the stand what had become of the truck.

Cummings has failed to show how the truck would have been materially favorable to him and how it would have had a reasonable probability of changing the outcome of his trial. Therefore, the Ohio Court of Appeals's conclusion that the State's failure to disclose its destruction of the truck was not a *Brady* violation was not an unreasonable application of federal law.

III.

For the foregoing reasons, we affirm the judgment of the district court.