(Slip Opinion) OCTOBER TERM, 2013 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BURT, WARDEN *v.* TITLOW

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 12–414.   Argued October 8, 2013—Decided November 5, 2013

Respondent Titlow and Billie Rogers were arrested for the murder of
Billie's husband.  After explaining to respondent that the State's evi-
dence could support a conviction for first-degree murder, respondent's
attorney negotiated a manslaughter plea in exchange for an agree-
ment to testify against Billie.  Three days before Billie's trial, re-
spondent retained a new attorney, Frederick Toca, who demanded an
even lower sentence in exchange for the guilty plea and testimony.
The prosecutor rejected the proposal, and respondent withdrew the
original plea.  Without that testimony, Billie was acquitted.  Re-
spondent was subsequently convicted of second-degree murder.  On
direct appeal, respondent argued that Toca provided ineffective assis-
tance by advising withdrawal of the plea without taking time to learn
the strength of the State's evidence.  The Michigan Court of Appeals
rejected the claim, concluding that Toca's actions were reasonable in
light of his client's protestations of innocence.  On federal habeas re-
view, the District Court applied the deferential standard of review set
forth in the Antiterrorism and Effective Death Penalty Act of 1996
(AEDPA), concluded that the Michigan Court of Appeals' ruling was
reasonable on the law and facts, and denied relief.  The Sixth Circuit
reversed.  It found the factual predicate for the state court's deci-
sion—that the plea withdrawal was based on respondent's assertion
of innocence—an unreasonable interpretation of the factual record,
given Toca's explanation at the withdrawal hearing that the decision
to withdraw was made because the State's original plea offer was
higher than the sentencing range provided by the Michigan guide-
lines.  It also found no evidence in the record that Toca adequately
advised respondent of the consequences of withdrawal.

*Held:* The Sixth Circuit failed to apply the "doubly deferential" stand-

ard of review recognized by the Court's case law when it refused to credit the state court's reasonable factual finding and assumed that counsel was ineffective where the record was silent. Pp. 4–11.

(a) AEDPA recognizes the federalism principle that state courts are adequate forums for the vindication of federal statutory and constitutional rights. It erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court, requiring them to "show that the state court's ruling . . . was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington* v. *Richter*, 562 U. S. ___, ___. Pp. 4–6.

(b) Here, the record readily supports the Michigan Court of Appeals' factual finding that Toca advised withdrawal of the guilty plea only after respondent's proclamation of innocence. The facts that respondent passed a polygraph test denying being in the room when Billie's husband was killed, discussed the case with a jailer who advised against pleading guilty if respondent was indeed innocent, and hired Toca just three days before Billie's trial at which respondent had agreed to self-incriminate, strongly suggest that respondent had second thoughts about confessing in open court and proclaimed innocence to Toca. The only evidence cited by the Sixth Circuit for its contrary conclusion was that Toca's sole explanation at the withdrawal hearing focused on the fact that the State's plea offer was substantially higher than that provided by the Michigan guidelines. The Michigan Court of Appeals was well aware of Toca's representations to the trial court and correctly found nothing inconsistent about a defendant's asserting innocence on the one hand and refusing to plead guilty to manslaughter accompanied by higher-than-normal punishment on the other. Accepting as true the Michigan Court of Appeals' factual determination that respondent proclaimed innocence to Toca, the Sixth Circuit's *Strickland* analysis cannot be sustained. More troubling is that court's conclusion that Toca was ineffective because the record contained no evidence that he gave constitutionally adequate advice on whether to withdraw the plea. The Sixth Circuit turned on its head the principle that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Strickland* v. *Washington*, 466 U. S. 668, 690, with the burden to show otherwise resting squarely on the defendant, *id.*, at 687. The single fact that Toca failed to retrieve respondent's file from former counsel before withdrawing the guilty plea cannot overcome *Strickland*'s strong presumption of effectiveness. In any event, respondent admitted in open court that former counsel had explained the State's evidence and that it would support a first-degree murder conviction. Toca was

Syllabus

justified in relying on this admission to conclude that respondent understood the strength of the prosecution's case. Toca's conduct in this litigation was far from exemplary, but a lawyer's ethical violations do not make the lawyer *per se* ineffective, and Toca's questionable conduct was irrelevant to the narrow issue before the Sixth Circuit. Pp. 6–11.

680 F. 3d 577, reversed.

ALITO, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, THOMAS, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. SOTOMAYOR, J,. filed a concurring opinion. GINSBURG, J., filed an opinion concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 12–414

_____

## SHERRY L. BURT, WARDEN, PETITIONER *v.* VONLEE NICOLE TITLOW

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[November 5, 2013]

JUSTICE ALITO delivered the opinion of the Court.

When a state prisoner asks a federal court to set aside a
sentence due to ineffective assistance of counsel during
plea bargaining, our cases require that the federal court
use a "'doubly deferential'" standard of review that gives
both the state court and the defense attorney the benefit of
the doubt. *Cullen* v. *Pinholster*, 563 U. S. ___, ___ (2011)
(slip op., at 17). In this case, the Sixth Circuit failed to
apply that doubly deferential standard by refusing to
credit a state court's reasonable factual finding and by
assuming that counsel was ineffective where the record
was silent. Because the Antiterrorism and Effective
Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, and
*Strickland* v. *Washington*, 466 U. S. 668 (1984), do not
permit federal judges to so casually second-guess the
decisions of their state-court colleagues or defense attor-
neys, the Sixth Circuit's decision must be reversed.

I

Respondent Titlow and Billie Rogers, respondent's aunt,
murdered Billie's husband Don by pouring vodka down his
throat and smothering him with a pillow. With help from

attorney Richard Lustig, respondent reached an agree-
ment with state prosecutors to testify against Billie, plead
guilty to manslaughter, and receive a 7- to 15-year sen-
tence.  As confirmed at a plea hearing, Lustig reviewed the
State's evidence with respondent "over a long period of
time," and respondent understood that that evidence could
support a conviction for first-degree murder.  App. 43–44.
The Michigan trial court approved the plea bargain.

   Three days before Billie Rogers' trial was to commence,
however, respondent retained a new lawyer, Frederick
Toca.  With Toca's help, respondent demanded a substan-
tially lower minimum sentence (three years, instead of
seven) in exchange for the agreement to plead guilty and
testify.  When the prosecutor refused to accede to the new
demands, respondent withdrew the plea, acknowledging
in open court the consequences of withdrawal (including
reinstatement of the first-degree murder charge).  Without
respondent's critical testimony, Billie Rogers was acquit-
ted, and later died.

   Respondent subsequently stood trial.  During the course
of the trial, respondent denied any intent to harm Don
Rogers or any knowledge, at the time respondent covered
his mouth or poured vodka down his throat, that Billie
intended to harm him.  Indeed, respondent testified to
attempting to *prevent* Billie from harming her husband.
The jury, however, elected to believe respondent's previous
out-of-court statements, which squarely demonstrated
participation in the killing, and convicted respondent of
second-degree murder.  The trial court imposed a 20- to
40-year term of imprisonment.

   On direct appeal, respondent argued that Toca advised
withdrawal of the guilty plea without taking time to learn
more about the case, thereby failing to realize the strength
of the State's evidence and providing ineffective assistance
of counsel.  Rejecting that claim, the Michigan Court of
Appeals found that Toca acted reasonably in light of his

client's protestations of innocence. That court found that respondent's decision to hire Toca was "set in motion" by respondent's "statement to a sheriff's deputy that [respondent] did not commit the offense." App. to Pet. for Cert. 101a. Applying the standard set forth by our decision in *Strickland*, which requires that defense counsel satisfy "an objective standard of reasonableness," 466 U. S., at 688, the Michigan Court of Appeals concluded that "[w]hen a defendant proclaims . . . innocence . . . , it is not objectively unreasonable to recommend that the defendant refrain from pleading guilty—no matter how 'good' the deal may appear." App. to Pet. for Cert. 102a.

Respondent then filed a federal habeas petition under 28 U. S. C. §2254. Applying AEDPA's deferential standard of review, the District Court concluded that the Michigan Court of Appeals' ruling was "completely reasonable on the law and the facts" and denied relief. No. 07–CV–13614, 2010 WL 4115410, *15 (ED Mich., Oct. 19, 2010). In particular, the District Court concluded that "[c]ounsel could not be ineffective by trying to negotiate a better plea agreement for [Titlow] with Billie Rogers's trial imminent and [Titlow] stating at the time that Billie Rogers had committed the murder without . . . assistance." *Ibid.*

The Sixth Circuit reversed. It found that the factual predicate for the state court's decision—that the withdrawal of the plea was based on respondent's assertion of innocence—was an unreasonable interpretation of the factual record, given Toca's explanation at the withdrawal hearing that "the decision to withdraw Titlow's plea was based on the fact that the State's plea offer was substantially higher than the Michigan guidelines for second-degree murder." 680 F. 3d 577, 589 (2012). Further observing that "[t]he record in this case contains no evidence" that Toca fully informed respondent of the possible consequences of withdrawing the guilty plea, the Sixth Circuit held that Toca rendered ineffective assistance of

counsel that resulted in respondent's loss of the benefit of the plea bargain. *Id.*, at 589–592. Citing our decision in *Lafler* v. *Cooper*, 566 U. S. ___ (2012), the Sixth Circuit remanded this case with instructions that the prosecution must reoffer the original plea agreement to respondent, and that the state court should "consul[t]" the plea agreement and "fashion" a remedy for the violation of respondent's Sixth Amendment right to effective assistance of counsel during plea bargaining. 680 F. 3d, at 592. Chief Judge Batchelder dissented on the grounds that the Michigan Court of Appeals' decision was reasonable. *Id.*, at 593.

On remand, the prosecution followed the Sixth Circuit's instructions and reoffered the plea agreement it had offered some 10 years before—even though, in light of Billie Rogers' acquittal and subsequent death, respondent was no longer able to deliver on the promises originally made to the prosecution. At the plea hearing, however, respondent balked, refusing to provide a factual basis for the plea which the court could accept. Respondent admitted to pouring vodka down Don Rogers' throat, but denied assisting in killing him or knowing that pouring vodka down his throat could lead to his death. As at trial, respondent testified to attempting to prevent Billie Rogers from harming her husband. Eventually, after conferring with current counsel (not Toca), respondent admitted to placing Don Rogers in danger by pouring vodka down his throat with the knowledge that his death could result. The trial court took the plea under advisement, where the matter stands at present. We granted certiorari. 568 U. S. ___ (2013).

## II

AEDPA instructs that, when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state

court's decision only if it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U. S. C. §2254(d)(2). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." §2254(e)(1). We have not defined the precise relationship between §2254(d)(2) and §2254(e)(1), and we need not do so here. See *Wood* v. *Allen*, 558 U. S. 290, 293 (2010). For present purposes, it is enough to reiterate "that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.*, at 301. AEDPA likewise imposes a highly deferential standard for reviewing claims of legal error by the state courts: A writ of habeas corpus may issue only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" this Court. §2254(d)(1).

AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights. "[T]he States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause. Under this system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." *Tafflin* v. *Levitt*, 493 U. S. 455, 458 (1990). This principle applies to claimed violations of constitutional, as well as statutory, rights. See *Trainor* v. *Hernandez*, 431 U. S. 434, 443 (1977). Indeed, "state courts have the solemn responsibility equally with the federal courts to safeguard constitutional rights," and this Court has refused to sanction any decision that would "reflec[t] negatively upon [a] state court's ability to do so." *Ibid.* (internal quotation marks omitted). Especially where a case involves such a common

claim as ineffective assistance of counsel under *Strick-
land*—a claim state courts have now adjudicated in count-
less criminal cases for nearly 30 years—"there is no
intrinsic reason why the fact that a man is a federal judge
should make him more competent, or conscientious, or
learned . . . than his neighbor in the state courthouse."
*Stone* v. *Powell*, 428 U. S. 465, 494, n. 35 (1976) (internal
quotation marks omitted).

Recognizing the duty and ability of our state-court
colleagues to adjudicate claims of constitutional wrong,
AEDPA erects a formidable barrier to federal habeas relief
for prisoners whose claims have been adjudicated in state
court. AEDPA requires "a state prisoner [to] show that
the state court's ruling on the claim being presented in
federal court was so lacking in justification that there was
an error . . . beyond any possibility for fairminded disa-
greement." *Harrington* v. *Richter*, 562 U. S. ___, ___
(2011) (slip op., at 13). "If this standard is difficult to
meet"—and it is—"that is because it was meant to be."
*Id.,* at ___ (slip op., at 12). We will not lightly conclude
that a State's criminal justice system has experienced the
"extreme malfunctio[n]" for which federal habeas relief is
the remedy. *Id.*, at ___ (slip op., at 13) (internal quotation
marks omitted).

## III

The record readily supports the Michigan Court of Ap-
peals' factual finding that Toca advised withdrawal of the
guilty plea only after respondent's proclamation of inno-
cence. Respondent passed a polygraph denying planning
to kill Don Rogers or being in the room when he died.
Thereafter, according to an affidavit in the record, re-
spondent discussed the case with a jailer, who advised
against pleading guilty if respondent was not in fact

guilty. App. 298 (affidavit of William Pierson).[1] That conversation "set into motion" respondent's decision to retain Toca. *Ibid.,* ¶8. Those facts, together with the timing of Toca's hiring—on the eve of the trial at which respondent was to self-incriminate—strongly suggest that respondent had second thoughts about confessing in open court and proclaimed innocence to Toca. That conclusion is further bolstered by respondent's maintenance of innocence of Don Rogers' death at trial.

Indeed, reading the record in any other way is difficult. Respondent's first lawyer, Lustig, had negotiated a deal that was quite favorable in light of the fact, admitted by respondent in open court, that the State's evidence could support a conviction for first-degree murder. This deal involved a guilty plea to manslaughter and a 7- to 15-year sentence—far less than the mandatory sentence of life in prison that results from a conviction for first-degree murder under Michigan law. See Mich. Comp. Laws Ann. §750.316 (West Supp. 2013). Yet after a jailer advised against pleading guilty if respondent was not guilty, *something* caused respondent both to fire Lustig and hire Toca (who within a few days withdrew the guilty plea), and then to maintain innocence at trial. If that something was not a desire to assert innocence, it is difficult to imagine what it was, and respondent does not offer an alternative theory.

The only evidence the Sixth Circuit cited for its conclusion that the plea withdrawal was not based on respondent's proclamation of innocence was that, when Toca

—————

[1] Respondent complains that the state court improperly relied on this affidavit, but it was respondent who provided the affidavit to the state court and asked it to rely on the affidavit as part of the ground for remanding for an evidentiary hearing. In any event, even if the state court used the affidavit for a purpose not permitted by state law—a proposition we do not endorse—that would not empower a federal court to grant habeas relief. See *Estelle* v. *McGuire*, 502 U. S. 62, 72 (1991).

moved to withdraw the guilty plea, he "did not refer to Titlow's claims of innocence," but instead "explained that the decision to withdraw [the] plea was based on the fact that the State's plea offer was substantially higher than the Michigan guidelines" for manslaughter. 680 F. 3d, at 589. The Sixth Circuit believed that this fact "sufficiently rebuts the Michigan Court of Appeals' finding that the plea withdrawal was based on Titlow's assertion of innocence." *Ibid.*

But the Michigan Court of Appeals was well aware of Toca's representations to the trial court, noting in its opinion that respondent "moved to withdraw [the] plea because the agreed upon sentence exceeded the sentencing guidelines range." App. to Pet. for Cert. 100a. The Michigan Court of Appeals, however—unlike the Sixth Circuit— also correctly recognized that there is nothing inconsistent about a defendant's asserting innocence on the one hand and refusing to plead guilty to manslaughter accompanied by higher-than-normal punishment on the other. Indeed, a defendant convinced of his or her own innocence may have a particularly optimistic view of the likelihood of acquittal, and therefore be more likely to drive a hard bargain with the prosecution before pleading guilty. Viewing the record as a whole, we conclude that the Sixth Circuit improperly set aside a "reasonable state-court determinatio[n] of fact in favor of its own debatable interpretation of the record." *Rice* v. *Collins*, 546 U. S. 333, 335 (2006).

Accepting as true the Michigan Court of Appeals' factual determination that respondent proclaimed innocence to Toca, the Sixth Circuit's *Strickland* analysis cannot be sustained. Although a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities under *Strickland*, it may affect the advice counsel gives. The Michigan Court of Appeals' conclusion that Toca's advice satisfied *Strickland* fell within the bounds of

reasonableness under AEDPA, given that respondent was claiming innocence and only days away from offering self-incriminating testimony in open court pursuant to a plea agreement involving an above-guidelines sentence.[2]  See *Florida* v. *Nixon*, 543 U. S. 175, 187 (2004) (explaining that the defendant has the "'ultimate authority'" to decide whether to accept a plea bargain); *Brookhart* v. *Janis*, 384 U. S. 1, 7–8 (1966) (observing that a lawyer must not "override his client's desire . . . to plead not guilty").  The Sixth Circuit's conclusion to the contrary was error.

Even more troubling is the Sixth Circuit's conclusion that Toca was ineffective because the "record in this case contains no evidence that" he gave constitutionally adequate advice on whether to withdraw the guilty plea.  680 F. 3d, at 590.  We have said that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Strickland*, 466 U. S., at 690, and that the burden to "show that counsel's performance was deficient" rests squarely on the defendant, *id.*, at 687.  The Sixth Circuit turned that presumption of effectiveness on its head.  It should go without saying that the absence of evidence cannot overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."  *Id.*, at 689.  As Chief Judge Batchelder correctly explained in her dissent, "[w]ithout evidence that Toca gave incorrect advice or evidence that he failed to give material advice, Titlow cannot establish that his performance was deficient." 680 F. 3d, at 595.

The Sixth Circuit pointed to a single fact in support of

_____

[2] We assume, *arguendo*, as did the Michigan Court of Appeals, that Toca went beyond facilitating respondent's withdrawal of the plea and advised withdrawal, although we note that the sole basis in the record for this assertion appears to be respondent's self-serving testimony.

its conclusion that Toca failed to adequately advise respondent: his failure to retrieve respondent's file from Lustig before withdrawing the guilty plea. *Id.*, at 590. But here, too, the Sixth Circuit deviated from *Strickland'*s strong presumption of effectiveness. The record does not reveal how much Toca was able to glean about respondent's case from other sources; he may well have obtained copies of the critical materials from prosecutors or the court. (Indeed, Toca's statement at the plea withdrawal hearing that "[t]here's a lot of material here" strongly suggests that he did have access to a source of documentation other than Lustig's file. App. 71.)

In any event, the same considerations were relevant to entering and withdrawing the guilty plea, and respondent admitted in open court when initially pleading guilty that Lustig had explained the State's evidence and that this evidence would support a conviction for first-degree murder. Toca was justified in relying on this admission to conclude that respondent understood the strength of the prosecution's case and nevertheless wished to withdraw the plea. With respondent having knowingly entered the guilty plea, we think any confusion about the strength of the State's evidence upon withdrawing the plea less than a month later highly unlikely.

Despite our conclusion that there was no factual or legal justification for overturning the state court's decision, we recognize that Toca's conduct in this litigation was far from exemplary. He may well have violated the rules of professional conduct by accepting respondent's publication rights as partial payment for his services, and he waited weeks before consulting respondent's first lawyer about the case. But the Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance, and we have held that a lawyer's violation of ethical norms does not make the lawyer *per se* ineffective. See *Mickens* v. *Taylor*, 535 U. S. 162, 171

(2002). Troubling as Toca's actions were, they were irrelevant to the narrow question that was before the Sixth Circuit: whether the state court reasonably determined that respondent was adequately advised before deciding to withdraw the guilty plea. Because the Michigan Court of Appeals' decision that respondent was so advised is reasonable and supported by the record, the Sixth Circuit's judgment is reversed.[3]

*It is so ordered.*

---

[3] Because we conclude that the Sixth Circuit erred in finding Toca's representation constitutionally ineffective, we do not reach the other questions presented by this case, namely, whether respondent adequately demonstrated prejudice, and whether the Sixth Circuit's remedy is at odds with our decision in *Lafler* v. *Cooper*, 566 U. S. ___ (2012).

# SUPREME COURT OF THE UNITED STATES

_____

No. 12–414
_____

## SHERRY L. BURT, WARDEN, PETITIONER *v.* VONLEE NICOLE TITLOW

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[November 5, 2013]

JUSTICE SOTOMAYOR, concurring.

In my view, this case turns on Vonlee Titlow's failure to present enough evidence of what Frederick Toca did or did not do in the handful of days after she hired him and before she withdrew her plea. As our opinion notes, she bore the burden of overcoming two presumptions: that Toca performed effectively and that the state court ruled correctly. She failed to carry this burden. We need not say more, and indeed we do not say more. I therefore join the Court's opinion in full. I write separately, however, to express my understanding of our opinion's limited scope, particularly with respect to two statements that it makes about the adequacy of Toca's performance.

First, we state that "[a]lthough a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities under *Strickland*, it may affect the advice counsel gives." *Ante*, at 8. The first part of that statement bears emphasis: Regardless of whether a defendant asserts her innocence (or admits her guilt), her counsel must "make an independent examination of the facts, circumstances, pleadings and laws involved and then . . . offer his informed opinion as to what plea should be entered." *Von Moltke* v. *Gillies*, 332 U. S. 708, 721 (1948) (plurality opinion). A defendant possesses "'the ultimate authority'" to determine her plea. *Florida* v. *Nixon*, 543 U. S. 175,

187 (2004). But a lawyer must abide by his client's decision in this respect only after having provided the client with competent and fully informed advice, including an analysis of the risks that the client would face in proceeding to trial. Given our recognition that "a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities," *ante,* at 8, our further observation that such a proclamation "may affect the advice counsel gives," *ibid.*, states only the obvious: that a lawyer's advice will always reflect the objectives of the representation, as determined by the adequately informed client.

Second, we state that it was reasonable for the Michigan Court of Appeals to reject respondent's claim, "given that respondent was claiming innocence and only days away from offering self-incriminating testimony" at her aunt's trial. *Ante,* at 9. This is true in context: Because respondent failed to carry her burden of showing that Toca's performance was not adequate, the state court reasonably held that it was. But our statement about the facts of this case does not imply that an attorney performs effectively in advising his client to withdraw from a plea whenever the client asserts her innocence and has only a few days to make the decision. Had respondent made a better factual record—had she actually shown, for example, that Toca failed to educate himself about the case before recommending that she withdraw her plea—then she could well have prevailed.

Because (and only because) respondent failed to present enough evidence to overcome the twin presumptions of AEDPA and *Strickland,* I join fully in the opinion of the Court.

# SUPREME COURT OF THE UNITED STATES

_____

No. 12–414

_____

## SHERRY L. BURT, WARDEN, PETITIONER *v.* VONLEE NICOLE TITLOW

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[November 5, 2013]

JUSTICE GINSBURG, concurring in the judgment.

While I join the Court's judgment, I find dubious the Michigan Court of Appeals' conclusion that Toca acted reasonably in light of Titlow's protestations of innocence. Toca became Titlow's counsel on the recommendation of the deputy sheriff to whom Titlow professed innocence. App. 298. As the Court rightly observes, Toca's conduct was "far from exemplary." *Ante,* at 10. With virtually no time to make an assessment of Titlow's chances of prevailing at trial, and without consulting the lawyer who had negotiated Titlow's plea, Toca told Titlow he could take the case to trial and win. App. 295 (Titlow's uncontradicted averment). With Toca's aid, Titlow's plea was withdrawn just three days after Toca's retention as defense counsel. At sentencing, the prosecutor volunteered that Titlow had been the "victim of some bad advice." *Id.,* at 291.

Nevertheless, one thing is crystal clear. The prosecutor's agreement to the plea bargain hinged entirely on Titlow's willingness to testify at her aunt's trial. See App. 42–43, 45. Once Titlow reneged on that half of the deal, the bargain failed. Absent an extant bargain, there was nothing to renew. See *Puckett* v. *United States*, 556 U. S. 129, 137 (2009) ("Although the analogy may not hold in all respects, plea bargains are essentially contracts. . . .

[W]hen one of the exchanged promises is not kept . . . we say that the contract was broken."); Scott & Stuntz, Plea Bargaining as Contract, 101 Yale L. J. 1909, 1953 (1992) ("When defendants promise to plead guilty in return for government concessions and then do so, they are legally entitled to the concessions.  At the same time, if the defendant fails to perform, the prosecutor need not perform either." (footnote omitted)).  In short, the prosecutor could not be ordered to "renew" a plea proposal never offered in the first place.  With the plea offer no longer alive, Titlow was convicted after a trial free from reversible error.  See App. 295.  For these reasons, I join the Court's judgment.