# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-31013

United States Court of Appeals
Fifth Circuit

**FILED**

October 3, 2014

Lyle W. Cayce
Clerk

MILTON ISAAC,

Petitioner–Appellee

v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY,

Respondent–Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:10-CV-4591

Before HIGGINBOTHAM, JONES, and PRADO, Circuit Judges.

PER CURIAM:*

A Louisiana jury convicted Petitioner Milton Isaac ("Isaac") of possession of heroin with intent to distribute. He applied for post-conviction relief in state court arguing that he was actually innocent of the "intent to distribute" prong of the crime of conviction. His federal constitutional claims alleged violations of *Napue v. Illinois*, 360 U.S. 264 (1959), and *Brady v. Maryland*, 373 U.S. 83 (1963). After the state habeas trial court granted relief, the state appellate

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-31013

court reversed and denied relief. On federal habeas review, the district court granted relief. We reverse.

## I.    BACKGROUND

### A.    Trial Proceedings[1]

The arresting officer testified at trial that, on December 3, 1985, he investigated a dark sedan with a woman sitting in it, parked in the middle of the street. This investigation was interrupted when he heard another woman shouting from the third story of a nearby apartment building that a man had a gun in someone's mouth. Arriving at the apartment, the officer found Isaac pinned to the ground by Edgar Barabino ("Barabino"). Barabino had a pistol in Isaac's mouth and tried to shoot the gun, but the officer prevented the gun from firing. When the officer patted down Isaac, he recovered $81 in cash wrapped around 21 packages of heroin. Moreover, Isaac was wearing a flak jacket, and two guns were found in the car parked in the middle of the street, the car in which Isaac had arrived.

Carolyn Harris ("Harris") was the woman in the car. She testified at trial that she had been with Isaac and Terrell Sterling ("Sterling") throughout the course of that evening. Harris testified that Sterling was going through heroin withdrawal. Because Isaac had no heroin on him, she left with Isaac in search of drugs.

Officer Frank Benn is an expert in the packaging and distribution of controlled substances. He testified that heroin is normally packaged in "bundles" of 25 papers—individual packets—with a street value of $20–$25 per paper. While a heavy heroin user would use whatever amount of heroin he could get, the officer noted that it would be unusual to find more than two or

---

[1] We draw the trial proceedings—which is essentially undisputed—from the magistrate judge's thorough findings and recommendations below.

No. 13-31013

three papers in the possession of a user. He further testified that the heroin seized in this case was consistent with the normal amount for distribution of heroin. He also testified that dealers usually carry guns.

Isaac took the stand in his own defense. He testified that he was an addict and that he had gone to Barabino, a known dealer, to purchase heroin for his personal use. He said that when he found himself short of money, he attempted to take cash and drugs from Barabino by force, and that a scuffle ensued.

The State called Barabino in rebuttal, and he testified that he did not sell drugs. Barabino suggested that if Isaac had been carrying heroin, he must have had the drugs with him when he entered the apartment.

On June 17, 1986, a Louisiana state jury convicted Isaac of the crime of possession of heroin with intent to distribute under Louisiana Revised Statute Annotated § 40:966(A)(1). Isaac was sentenced to a mandatory term of life in prison without the possibility of parole. Isaac appealed his conviction and sentence to the Louisiana Fourth Circuit Court of Appeal (hereinafter the "Fourth Circuit"). The Fourth Circuit affirmed his conviction, but amended his life sentence by removing the prohibition against parole.

## B.  Post-Conviction Proceedings

After multiple unsuccessful requests for post-conviction relief, Isaac filed on March 1, 2007 a motion for a new trial based upon newly discovered evidence. The state trial court held two hearings—one on August 29, 2007, and the other on March 26, 2008—to take evidence on the motion, which it construed as an application for post-conviction relief.

The newly discovered pieces of evidence were the recantations of two witnesses at trial, Harris and Barabino. They claimed that the prosecutor in the case, Assistant District Attorney Glynn Alexander ("Alexander" or "ADA Alexander"), elicited their false testimony in order to convict Isaac. In turn,

3

No. 13-31013

Isaac raised issues concerning perjured testimony in violation of *Napue*, suppressed evidence in violation of *Brady*, and actual innocence. Isaac contended that he was actually innocent of the "intent to distribute" prong of the statute, and conceded that he would have been guilty of simple possession of heroin. At the post-conviction hearings, Harris, Barabino, Isaac's aunt Janice Isaac ("Ms. Isaac"), and Alexander testified as follows.

    1.   Testimony of Harris

On November 28, 2000, Harris submitted an affidavit describing her conversations with ADA Alexander before trial and her testimony at trial. As stated in the affidavit, she told ADA Alexander before trial that, on the day of Isaac's arrest, Isaac had been experiencing extreme symptoms of heroin withdrawal. Isaac called Sterling, who then gave Isaac money so that Isaac could purchase heroin for his personal use. She told ADA Alexander that she then drove with Isaac to Barabino's house to purchase heroin.

In response, ADA Alexander threatened to charge her for her role in the case if she did not alter her testimony to reflect that Sterling was the one suffering from withdrawal and that Isaac obtained the drugs from Barabino to distribute to Sterling. Harris stated that she agreed to testify falsely for three reasons: she felt that "Isaac needed some time off the street to get his life in order"; Alexander promised her that Isaac would only receive a 10-year sentence; and Alexander promised her that she would not be charged. Harris also stated that she received immunity in exchange for her false testimony.

Harris explained at the March 26, 2008 post-conviction hearing that Sterling brought Isaac $81 for Isaac to purchase heroin from Barabino. She further testified that she and Isaac stopped at Barabino's apartment and procured some guns, which they put in the car. As Harris waited for Isaac outside the apartment, a police officer approached her and asked her for

identification.  At that moment, a woman inside the apartment called out for help, exclaiming that Barabino had a gun in Isaac's mouth.

Harris testified that Alexander threatened to charge her with possession of the firearms if she did not testify against Isaac.  In exchange for her testimony, Alexander allegedly paid for a hotel and all her expenses during the trial, and helped her obtain Section 8 housing.  Moreover, according to Harris, Alexander told her that she "needed to say that [Sterling] was still in the house . . . so that [the prosecution] could say that [Isaac] went to get the drugs for [Sterling]."  Harris testified that she chose to come forward and tell the truth after her grown daughter (Isaac's child) discovered what happened.

The State cross-examined Harris.  She acknowledged that even though she claimed that Alexander instructed her to testify falsely that Sterling had stayed behind while she and Isaac went to procure drugs from Barabino, she gave no such testimony at trial.

2.    Testimony of Barabino

On July 30, 2007, Barabino submitted an affidavit stating that, on the day of Isaac's arrest, Barabino purchased 20 to 25 bags of heroin from a third-party for himself and Isaac because both men were heroin addicts.  According to Barabino, Isaac attempted to buy heroin from Barabino, but when Barabino refused to sell, Isaac threatened him with a gun, saying that he was sick and desperate for heroin.  Barabino stated that at no point did Isaac attempt to distribute heroin to him or any other person.  Barabino also stated that an unnamed prosecutor threatened to charge members of Barabino's family with drug offenses unless he testified that Isaac was in possession of the heroin when the police arrived at Barabino's apartment.

At the August 29, 2007 post-conviction hearing, Barabino testified that the prosecutor who had coerced him to testify was ADA Alexander.  According to Barabino, Alexander told him that if Isaac was released from custody, Isaac

would kill Barabino.  When that tactic proved unsuccessful, Alexander also threatened to bring criminal drug charges against Barabino's family members if he did not testify against Isaac.  Barabino testified that Alexander claimed he would bring these charges based on Isaac's statement to the police that the heroin found on Isaac had come from Barabino's house.  Barabino told Alexander that Isaac's statement was untrue.  Isaac's post-conviction counsel then introduced into evidence an internal District Attorney memo—from the time of the prosecution—recommending the use of the specter of an aggravated assault charge to "encourage" Barabino to testify against Isaac.  Barabino testified that prosecutors offered to "get rid of" an aggravated battery charge pending against him in state court if he testified against Isaac.  But Barabino said that he "only [could] testify to the truth" that Isaac sought only to use heroin on the day he was arrested; that while he and Isaac would purchase heroin to use together, Barabino never knew Isaac to have sold heroin; and that Isaac did not attempt to sell or give Barabino heroin on the day in question.  Barabino explained that after spending time in jail himself, he regretted having helped send Isaac to prison by offering false testimony at trial.  During cross-examination, Barabino conceded that he never testified at trial that Isaac dealt drugs generally or that he had tried to sell heroin to Barabino on the date of his arrest.

3. Testimony of Ms. Isaac

At the post-conviction hearing, Isaac's aunt, Janice Isaac, repeated her trial testimony that Isaac was a heroin addict at the time of his arrest.  Ms. Isaac testified that ADA Alexander helped to house Harris during the prosecution and helped procure Section 8 housing for Harris.  Ms. Isaac noted that the wait time to receive Section 8 housing at the time of the trial would have otherwise been lengthy.  She also testified that Alexander tried to get her to convince Isaac to take a plea deal for 10 years.

No. 13-31013

4.   Testimony of Alexander

Former ADA Alexander testified that during the screening of Isaac's case, he spoke with Barabino, who relayed to him the essential facts surrounding the interaction between him and Isaac on the day in question.  In Alexander's view, his intent was not to prove that Isaac had sold heroin to Barabino or anyone else.  Rather, he theorized that Isaac was a "jackman" who had tried to rob Barabino of his stash.  This theory was based on Alexander's purported familiarity with the drug trade gained during his previous three years working as a criminal defense attorney.  Alexander further testified that he did not coerce, threaten, or intimidate Harris or Barabino into testifying at Isaac's trial because he "didn't have any reason to."  His only instruction to either witness was to "[t]ell the truth," which they did, to his knowledge.  Alexander also testified that he harbored no particular grudge against Isaac and that Isaac's prosecution was "just another case."

On cross-examination, Alexander explained his theory at trial—that Isaac had intended to rob Barabino of his heroin stash—was based on the facts of the case, including Isaac's possession of multiple firearms and a flak jacket.  Alexander testified that Harris was a very cooperative witness who wanted to testify despite concerns that she might be in trouble.  Alexander assured her that nothing was going to happen to her and that she needed to speak honestly about her knowledge about the case.  Alexander testified that he did not provide Harris with housing during the prosecution and did not help her obtain Section 8 housing.  He also categorically denied threatening Harris with jail if she did not testify against Isaac, and stated that anyone testifying that he did so "[would] be lying."  Finally, Alexander reiterated that he did not tell Harris to testify that Isaac procured drugs to give to Sterling.

On redirect examination, Alexander testified that he put the State's offer of immunity for Harris on the record in open court.

7

5.    Post-Conviction Relief

The state habeas trial court granted the post-conviction application on May 30, 2008. The State then sought writs from the Fourth Circuit, and that court reversed the trial court on October 13, 2008. The Fourth Circuit found that the petition was procedurally defective because it was time-barred and repetitive. In the alternative, the Fourth Circuit held that Isaac's claims failed on the merits. The Fourth Circuit denied rehearing, and the Louisiana Supreme Court denied a request for supervisory writs.

On November 22, 2010, this Court granted Isaac authorization under 24 U.S.C. § 2244(b)(3)(A) to file a second or successive petition. Isaac then filed his successive petition with the federal district court. Based upon newly discovered evidence, Isaac raised the following claims: (1) the State knowingly introduced perjured testimony at trial in violation of *Napue*; (2) the State withheld exculpatory material evidence from the defense and the jury in violation of *Brady*; and (3) Isaac is actually innocent of the crime for which he was convicted.

The federal magistrate judge issued a report and recommendation that Isaac's habeas application be dismissed as successive under § 2244(b)(2)(B). Alternatively, on the merits, the magistrate judge recommended Isaac could not demonstrate that the facts would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense. Therefore, the magistrate judge recommended dismissing the habeas petition.

The district court sustained Isaac's objections to the recommendation and, upon independent review, granted habeas relief. Notably, the district court stated that "[t]he Louisiana Fourth Circuit Court of Appeals, which overturned the hearing court's findings, was not the finder of fact, and in this highly factual instance, this Court defers to [the state habeas trial court's]

findings." The district court then concluded that Isaac had overcome the procedural bar against successive petitions, and that he satisfied his burden under 28 U.S.C. § 2254(d) as to his *Napue* and *Brady* claims.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction to consider Isaac's § 2254 petition pursuant to 28 U.S.C. § 2241. Because this is an appeal of a final judgment of a district court, this Court has jurisdiction under 28 U.S.C. § 1291. When reviewing a district court's grant of habeas relief, this Court reviews issues of law *de novo* and findings of fact for clear error. *Woodfox v. Cain*, 609 F.3d 774, 788–89 (5th Cir. 2010).

If the state habeas court adjudicated a claim on the merits, then the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), §§ 101–108, Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended at 28 U.S.C. §§ 2244, 2253–2266), provides the appropriate standard of review. Section 2254(d) states that a state prisoner's application for a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim":

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d)(1) encompasses two distinct inquiries. A "state court's decision is 'contrary to' clearly established federal law if 'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" *Hoffman v. Cain*, 752 F.3d

430, 436–37 (5th Cir. 2014) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). By contrast, "[a] state court's decision involves an 'unreasonable application' of clearly established federal law if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 437 (alteration in original) (quoting *Williams*, 529 U.S. at 413). As to this latter inquiry, we "focus on 'the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence.'" *Id.* (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam)). To determine whether the state court unreasonably applied a Supreme Court decision, a federal habeas court "must determine what arguments or theories supported or, . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

A challenge to a state court decision under § 2254(d)(2) challenges the state court's determination of the facts. "[A] determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Section 2254(e)(1) is the 'arguably more deferential standard.'" *Hoffman*, 752 F.3d at 437 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). A factual determination is "not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood*, 558 U.S. at 301.

Overall, § 2254 establishes a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citation and

internal quotation marks omitted).  Indeed, state courts are presumed to "know and follow the law."  *Id.*  The petitioner has the burden of showing that "there was no reasonable basis for the state court to deny relief."  *Richter*, 131 S. Ct. at 784.  "For claims that are not adjudicated on the merits in the state court, this Court applies a *de novo* standard of review."  *Hoffman*, 752 F.3d at 437 (citation omitted).

## III.    DISCUSSION

We first determine whether the deferential AEDPA scheme applies and, if so, which court's version of the facts to defer to.  Then, we turn to Isaac's *Napue* and *Brady* claims.

### A.  AEDPA Deference

Isaac argues that the Fourth Circuit did not adjudicate his *Napue* and *Brady* claims on the merits, and that the Fourth Circuit did not overrule the state habeas trial court's factual findings as to those claims.  We disagree with Isaac on both points and afford AEDPA deference to the Fourth Circuit's decision, including its factual findings.

1.    The Fourth Circuit's Adjudication of Isaac's Claims

As noted above, AEDPA deference to a state court decision applies only to claims the state court previously "adjudicated on the merits."  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Richter*, 131 S. Ct. at 784–85 (citation omitted).  That "presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  *Id.* at 785.  More recently, the Supreme Court applied the *Richter* presumption even though the "state court rule[d] against the defendant and issue[d] an opinion that

11

addresse[d] some issues but [did] not expressly address the federal claim in question." *Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013).

Isaac argues that the "merits" portion of the Fourth Circuit's opinion did not decide his federal claims on the merits. Instead, according to Isaac, the Fourth Circuit simply applied the Louisiana standard for a motion for a new trial to determine whether the trial court abused its discretion in granting a new trial. The State counters that the Louisiana standard was only used as a vehicle through which the Fourth Circuit adjudicated the federal claims on the merits.

Here, Isaac has not overcome the *Richter* presumption. The Fourth Circuit began its discussion by reciting Louisiana Code of Criminal Procedure article 851 and its four requirements for the grant of a new trial based on newly discovered evidence. The Fourth Circuit then held that the recantations were immaterial because there was more than enough other evidence to prove that Isaac possessed the requisite intent to distribute. In so holding, the Fourth Circuit cited to the materiality standard from *United Stated v. Bagley*, 473 U.S. 667 (1985), a United States Supreme Court case that clarifies the materiality standard under *Brady* and its progeny. The Fourth Circuit then proceeded to question the veracity of the recantations by pointing to inconsistencies between the trial testimonies, affidavits, and the post-conviction testimonies of the two recanting witnesses. Finally, the Fourth Circuit turned to the allegation of prosecutorial misconduct. In rejecting that claim, it cited to *Napue* and expressly noted that it had already addressed two of three *Napue* factors, and then proceeded to discuss the remaining factor.

In light of this reasoning and the invocation of the appropriate federal standards, the Fourth Circuit "understood itself to be deciding . . . question[s] with federal constitutional dimensions." *See Williams*, 133 S. Ct. at 1098. Isaac has not overcome the presumption that the Fourth Circuit adjudicated

No. 13-31013

his federal claims on the merits.  Accordingly, we apply the usual AEDPA deference to the Fourth Circuit's merits decision.  We discuss next whether the state habeas trial court's factual findings survived that decision.

2.   The Fourth Circuit's Review of the State Habeas Trial Court's Findings of Fact

Under AEDPA, this Court reviews "the *last* reasoned state court decision." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (emphasis added) (citation and internal quotation marks omitted).  Nevertheless, a state trial court's factual findings may survive a state appellate court's denial of habeas relief if the state appellate court did not explicitly or implicitly reject the factual findings of the state trial court.  *Compare Westley v. Johnson*, 83 F.3d 714, 720 n.2 (5th Cir. 1996) (deferring to the state habeas trial court's factual findings where the state appellate court "did not reject the factual findings of the lower court" and the appellate court's denial of habeas relief "was not inconsistent with the factual findings" of the state habeas trial court), *and Craker v. Procunier*, 756 F.2d 1212, 1214 (5th Cir. 1985) (deferring to state habeas trial court's factual findings because the state appellate court "did not reject the factual findings of the state [trial] court; it merely held that the facts as found did not entitle Craker to relief"), *with Micheaux v. Collins*, 944 F.2d 231, 232 (5th Cir. 1991) (en banc) (per curiam) (affording no deference to state habeas trial court's factual findings because they were "not adopted []or incorporated in the action of the [state appellate court], [and were] directly inconsistent with that court's peremptory denial of relief").

Here, the Fourth Circuit divided its analysis of the merits of Isaac's claims into three subsections.  First, in a subsection entitled "Materiality of Recantation," the court found the new evidence immaterial in that it would not have warranted an acquittal had it been produced at trial.  Second, in a subsection entitled "Veracity of Recantations," the court found that Harris's

13

and Barabino's recantations were not credible or reliable.  In light of this finding, the Fourth Circuit held the new evidence would not create reasonable doubt in the minds of a new jury.  Finally, in a subsection entitled "Allegations of Prosecutorial Transgressions," the Fourth Circuit found that there was insufficient evidence that Alexander coerced perjury.

The parties disagree over which factual findings govern: the state habeas trial court's finding that Harris's and Barabino's post-conviction testimonies were "valid and credible," or the Fourth Circuit's finding in its second subsection that "there [were] factors present that cast a shadow over the truthfulness of the recanted statements."  The State argues that the Fourth Circuit overturned the state habeas trial court's factual findings.  Isaac disagrees, arguing that the Fourth Circuit focused only on whether the trial court abused its discretion in concluding that the recantation was material under Louisiana's standard for a new trial.

Isaac's argument would have us consider only the first subsection of the Fourth Circuit's decision and ignore the rest.  We decline Isaac's invitation to do so.  A review of the Fourth Circuit's opinion reveals that, in the second subsection, it did not accept the trial court's version of the facts.  Instead, the Fourth Circuit faulted the trial court for its "glaring omissions of critical facts" as to both Isaac's *Napue* and *Brady* claims.  And, as described in Part III(B)(1), *infra*, the Fourth Circuit introduced and relied upon these critical facts that the trial court omitted.  Accordingly, we review and afford deference to the Fourth Circuit's decision as the last reasoned state court decision.

**B.  Isaac's *Napue* and *Brady* Claims**

The Fourth Circuit's denial of habeas relief was neither based on an unreasonable determination of the facts, nor based on an unreasonable application of federal law.

14

No. 13-31013

1.    The Fourth Circuit's Determination of Facts

The evidence as to Isaac's *Napue* and *Brady* claims is virtually the same, and so we review the Fourth Circuit's factual determinations on both claims together under § 2254(d)(2). Isaac has "the burden of rebutting the presumption of correctness [of the Fourth Circuit's factual findings] by clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1). We hold that Isaac has not satisfied this burden.

At the outset, there is a long-established view under both federal and state law that recantations are highly suspicious. *Spence v. Johnson*, 80 F.3d 989, 1003 (5th Cir. 1996) ("[R]ecanting affidavits and witnesses are viewed with extreme suspicion by the courts." (citation and internal quotation marks omitted)); *State v. Prudholm*, 446 So. 2d 729, 736 (La. 1984) ("[R]ecantations are highly suspicious and, except in rare circumstances, a motion for new trial should not be grated on the basis of a recantation since that disclaimer is tantamount to admission of perjury so as to discredit the witness at a later trial."). With this in mind, the Fourth Circuit pointed to a number of inconsistencies between the trial testimonies, the affidavits, and the post-conviction testimonies of the recanting witnesses.

For example, both Harris and Barabino tried to recant testimony not actually given at trial. In both her affidavit and post-conviction testimony, Harris claimed that Alexander coerced her into testifying at trial that Isaac went to Barabino to purchase drugs for Sterling. And, at the post-conviction hearing, Harris testified that Alexander wanted her to testify that Sterling was still at Harris's house in order to further prove that Isaac was procuring the heroin to distribute to Sterling. At trial, however, Harris did not testify that Isaac purchased heroin from Barabino in order to distribute it, nor did she testify about Sterling's whereabouts after she and Isaac left her apartment. Barabino similarly tried to recant testimony that he had not actually given: at

15

the post-conviction hearing, Barabino claimed that he was forced by Alexander to testify at trial that Isaac intended to distribute the drugs, but the record reveals that he never actually gave such testimony at trial.

The Fourth Circuit also described the expansion of Harris's and Barabino's post-conviction testimonies from the time of their affidavits. In her affidavit, Harris asserted that she testified falsely because Alexander convinced her that Isaac needed some time off the streets, that he would serve only 10 years, and that it would prevent her from being charged and prosecuted herself. By contrast, at the post-conviction hearing, Harris asserted that she testified falsely for additional reasons, such as Alexander paying for her living expenses during the prosecution and helping her obtain Section 8 housing. And in his affidavit, Barabino asserted that he agreed to testify based on Alexander's threat to charge his family members with drug offenses. At the post-conviction hearing, however, Barabino testified that Alexander additionally coerced him by raising the idea that Isaac was going to kill Barabino if he ever got out of prison.

From these inconsistencies, the Fourth Circuit concluded that Isaac's "claims could be denied alone as to the issue of the veracity of the recanted statements of Ms. Harris and Mr. Barabino." Apparently relying upon his argument that the Fourth Circuit did not overturn the trial court's factual findings, Isaac makes no attempt to rebut the Fourth Circuit's findings on the veracity of the recantations. Accordingly, Isaac has not shown clear and convincing evidence to overcome the presumed correctness of these findings under § 2254(d)(2).

2.   The Fourth Circuit's Application of Federal Law

We also must determine whether the Fourth Circuit's adjudication of the *Napue* and *Brady* claims was contrary to, or an unreasonable application of, clearly established federal law in violation of § 2254(d)(1).

Under *Napue*, "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." 360 U.S. at 269 (citations omitted). "To establish a due process violation based on the government's use of false or misleading testimony, a petitioner must show (1) that the witness's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false." *Fuller v. Johnson*, 114 F.3d 491, 496 (5th Cir. 1997).

Under *Brady*, the State may not suppress evidence favorable to the accused when that evidence is material either to guilt or punishment. 373 U.S. at 87. "To make a *Brady* claim, [the petitioner] must prove: (1) that the 'evidence at issue [is] favorable to the accused, either because it is exculpatory, or because it is impeaching;' (2) that the 'evidence [has] been suppressed by the State, either willfully or inadvertently;' and (3) that 'prejudice [has] ensued.'" *Summers v. Dretke*, 431 F.3d 861, 874 (5th Cir. 2005) (alterations in original) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

Here, the Fourth Circuit rejected both claims based on its revised factual determinations. As to Isaac's *Napue* claim, the revised facts support the conclusion that the trial testimonies were not actually false. And as to Isaac's *Brady* claim, the revised factual determinations discrediting Harris's and Barabino's post-conviction testimonies, and implicitly accepting Alexander's, indicate that no evidence was suppressed. As discussed above, these factual findings have not been shown to be error by clear and convincing evidence. In light of these factual findings, we hold that the Fourth Circuit's rejection of Isaac's *Napue* and *Brady* claims on these grounds was not an unreasonable application of clearly established federal law.

## IV.　CONCLUSION

We REVERSE the district court's grant of habeas relief.